**STATE of Missouri, Respondent,**

v.

**Gary W. BRAMLETT, Appellant.**

**No. WD32819.**

Missouri Court of Appeals,
Western District.

Jan. 4, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 1, 1983.

Robert G. Duncan, Kansas City, for appellant.

Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, C.J., and SHANGLER, PRITCHARD, DIXON, CLARK, MANFORD and KENNEDY, JJ.

CLARK, Judge.

Gary W. Bramlett was found guilty by a jury of the offense of sale of a controlled substance and was sentenced to the minimum term of five years provided by § 195.-200(4), RSMo 1978. In this appeal, Bramlett challenges rulings by the trial court on objections to evidence and to argument by the prosecuting attorney as well as the exclusion of evidence proffered by the defense. In this discussion of trial error, only a brief recitation of the facts in evidence is required.

In February, 1980, one Cartmill, a deputy sheriff in Clay County, was operating undercover procuring evidence of illicit drug sales. One such sale was the purchase of several bags of marijuana from an individual later identified by Cartmill as the defendant Bramlett. Apparently because of Cartmill's continued undercover activities, Bramlett was not charged and arrested until some two months after the offense occurred. The state's case rested entirely on Cartmill's identification of Bramlett as the seller of the marijuana and on the physical evidence of the purchase. The defense was alibi supported by testimony from Bramlett's wife and her brother.

The contest over the reliability of Cartmill's identification of Bramlett as the individual from whom the marijuana was purchased was sharply drawn and depended entirely upon belief that Cartmill was truthful and accurate and disbelief of Bramlett's alibi. According to Cartmill, the transaction occurred in about ten minutes and no other law enforcement officers participated. A third person whom Cartmill relied upon for an introduction to Bramlett and was allegedly present during the sale did not testify. Cartmill also testified he had known Bramlett since 1973, but no inquiry was made as to how Cartmill was able to conceal his identify and make the incriminating purchase. In seeking to develop the details of acquaintanceship between Cartmill and Bramlett, the prosecutor inquired of Cartmill the course of their contact. Cartmill responded that as a deputy sheriff, he had twice previously booked Bramlett into the county jail.

Objection to this line of inquiry suggestive of other criminal activity by Bramlett was sustained and the jury was instructed to disregard the testimony. A motion for mistrial, however, was denied and that ruling is asserted here in one of Bramlett's points claiming trial error. Because we conclude that Bramlett is entitled to a new trial by reason of prejudicial closing argument of the state permitted by the trial court, the point need not be directly addressed. The fact of this testimony is, however, relevant by reason of its cumulative effect upon the characterization of Cartmill as a peace officer whose testimony was entitled, for that reason, to greater weight in the jury's deliberation.

Closing arguments for both sides sought to persuade the jury on the one hand that Cartmill's identification was positive and accurate or on the other that he was mistaken and overzealous in his undercover activities. The lack of corroborating identification witnesses for the state, discrepancies in Cartmill's reports and countervailing evidence by the defense were all stressed in argument on behalf of Bramlett. In closing, the prosecuting attorney made an appeal for the jury to return a guilty verdict to demonstrate its alliance with undercover operations fielded to combat drug traffic and argued as follows:

822

"How in the world are we going to fight it if you don't even believe your own representative who was sent into the field?

\* \* \* \* \* \*

Every undercover operation we've run has been a success. The prosecutor of this county, like all counties, is under a duty, a duty, a sworn duty, that if he believes in the innocence of the defendant, he has to make that known to the court and to his lawyer."

Objection to this argument was promptly made by Bramlett's attorney. The objection was overruled and a request for mistrial was denied.

■ As Bramlett correctly asserts in his brief, the vice of the prosecutor's argument lies in an appeal to the jury not to decide the case alone upon independent evaluation of the evidence, but upon reliance that the prosecution and its witnesses are servants of the public interest and would themselves candidly disclose any basis for acquitting the accused. The tenor of the argument is not to seek a verdict based on proof of guilt of the accused but as an expression of confidence in a prosecutorial system which does not bring innocent persons to trial. This appeal to the jury is a pernicious attack upon fundamental concepts of the criminal justice system and exceeds the bounds of legitimate comment on the evidence.

■ No comparable case has been cited nor has independent research disclosed any in which this line of jury argument has been attempted. The cases do hold, however, that argument by the prosecutor as to his belief of guilt, if expressed at all, must be based upon and related in his argument to the evidence brought before the jury. A prosecutor will not be permitted to argue to a jury in a way suggestive of special knowledge he has showing the defendant to be guilty. *State v. Anthony,* 577 S.W.2d 161 (Mo.App.1979). The prosecutor may not imply to the jury that he has knowledge which, if the jury but knew those facts, would cause them to return a verdict of guilty. *State v. Montgomery,* 363 Mo. 459, 251 S.W.2d 654 (1952). Failure to sustain

objection to argument suggestive of facts known to the prosecution and indicative of defendant's guilt but not presented to the jury is prejudicial error warranting reversal of a conviction. *State v. Blockton,* 526 S.W.2d 915 (Mo.App.1975).

In the present case, the prosecutor made no reference to any evidence supportive of the argument to which Bramlett objected. Indeed, there scarcely could have been any proof that the undercover agent was a representative of the jury summoned to decide Bramlett's guilt nor could the jury have had information as to whether all the undercover operations had been successful. Least of all was the jury entitled to base its decision on the assumption that a failure of the prosecutor to confess Bramlett's innocence was in some way an indicia of guilt.

The argument quoted and other statements by the prosecutor which served as a preamble were prejudicially erroneous, particularly when employed in this case where a determination of guilt or innocence rested entirely on the credibility of the single witness for the state. The trial court erred in failing to sustain the objection to the argument.

Other points advanced by Bramlett appear to have been limited to the circumstances of time and are unlikely to be repeated on retrial. Those issues, therefore, are not considered.

The judgment of conviction and sentence are reversed and the case is remanded for a new trial.

SOMERVILLE, C.J., and SHANGLER, DIXON and KENNEDY, JJ., concur.

PRITCHARD, J., dissents and concurs·in dissent of MANFORD, J.

MANFORD, J., dissents in separate opinion.

MANFORD, Judge, dissenting.

I must dissent.

I cannot agree with the majority opinion ·for two reasons. First, I cannot agree that there was prejudicial closing argument by

the prosecution. Secondly, I cannot agree with the majority's failure to address and dispose of another point, and then with its conclusion, "The fact of this testimony is, however, relevant by reason of its cumulative effect upon the characterization of Cartmill as a peace officer whose testimony was entitled for that reason, to greater weight in the jury's deliberation."

This is a direct appeal from a jury conviction for the sale of marijuana in violation of § 195.020, RSMo 1978. A sentence of five years imprisonment was imposed. The judgment should be affirmed.

Four points are presented, which in summary charge the trial court erred (1) in refusing to grant a mistrial after admission of evidence which allegedly informed the jury that appellant had been involved in other criminal conduct, (2) in refusing to grant a mistrial because the prosecutor allegedly expressed a personal opinion of appellant's guilt, (3) in overruling appellant's objections to, and in allowing the prosecutor to define reasonable doubt, and (4) by refusing to admit certain defense evidence.

The record reveals the following evidence which supports the findings by the jury. Appellant was charged, by indictment, on April 9, 1980, with allegedly selling marijuana to one Eugene Cartmill on or about February 19, 1980. The original indictment was superceded by a substitute information which alleged that the offense occurred on or about February 18, 1980. Cartmill was an undercover narcotics agent who testified that appellant's brother advised him that he had a friend who could sell some marijuana. Cartmill, accompanied by the brother, went to 5049 North Garfield, a residence in Kansas City North, Clay County, Missouri. Cartmill testified that he arrived at approximately 9:15 p.m. Appellant answered the door. Cartmill recognized appellant because he had booked appellant twice before in jail. Appellant did not recognize Cartmill. Appellant took Cartmill to a bedroom and took out a box containing several bags of marijuana. Cartmill purchased four bags, allegedly containing an ounce of marijuana each, and paid appellant $90.00. Appellant gave the money to his wife. During the transaction, appellant told Cartmill he might have some L.S.D. for sale later. Cartmill made a positive identification of appellant. The substance in the bags was, in fact, marijuana. The defense was alibi. Appellant's wife testified that she and appellant were at the home of a friend until 11:00 p.m., and she then took appellant to work. Appellant's brother-in-law testified he was at 5049 North Garfield the night of the alleged sale, that neither appellant nor anyone else was at the residence and that no sale occurred. The jury returned its verdict of guilty and judgment and a sentence of five years was entered in accordance with the verdict.

Under point (1), appellant contends that the trial court erred in refusing to grant a mistrial. This contention is premised upon testimony by Cartmill, the officer who made the purchase from appellant. Appellant agrees that when Cartmill testified that he knew appellant as a result of having booked appellant into jail on two prior occasions, such testimony was tantamount to informing the jury that appellant had been involved in other criminal activity. Appellant contends that such testimony so prejudiced him that admonishment by the trial court could not negate the effect of the prejudice.

Respondent counters appellant's argument by contending that the testimony relative to prior bookings of appellant went to the issue of identification of appellant. The challenged testimony is as follows:

"Q. How did you know Gary Bramlett? A. I booked him into the jail on two different occasions.

MR. DUNCAN: Just a moment, Your Honor. May we approach the bench? (Counsel approached the bench)

MR. DUNCAN: I would request that, I have two requests, Your Honor. First of all, I would request a mistrial because it shows the defendant has other arrests and if that's not sustained I would then move that the jury be instructed to disregard it.

THE COURT: I take it first you're objecting?

MR. DUNCAN: Yes.

(In the hearing of the jury):

THE COURT: That objection is sustained.

(At the bench)

MR. DUNCAN: Next I move for a mistrial.

THE COURT: That request is overruled.

MR. DUNCAN: Then I would ask that the jury be instructed to disregard that.

(In the hearing of the jury)

THE COURT: Ladies and gentlemen of the jury, I have sustained the defendant's objection to the State's last question and I would now instruct you that you are to completely disregard any answer that was given by this witness in response to the last question.

Proceed."

On cross-examination, the record reveals that appellant challenged the officer's credibility regarding identification of appellant and it was established that the officer had made another purchase from appellant on April 3, 1980. On redirect examination it was revealed that appellant sold to the officer a quantity of L.S.D. (Lysergic Acid Diethylamide). On further cross-examination, inquiry was again made by the appellant concerning the L.S.D. purchase. Again, on redirect the record reveals the following:

"Q. (by Mr. Hensley): On how many different days have you seen the defendant in your life, approximately?

A. 300

Q. You indicated that you purchased— let me go back, 300 days? A. Uh-huh.

Q. And did you have occasion to get close to him?

A. Yes, sir.

Q. Did you have occasion to look at his face?

A. Yes, sir.

Q. And to look at his entire body?

A. Yes, sir.

Q. To speak with him? A. Yes, sir.

Q. You knew his name? A. Yes, sir.

Q. He knew your name? A. Yes, he did."

It becomes obvious, from a reading of the record, that the basic controversy was identification of appellant by the undercover officer. It is in context that the testimony of two prior jail bookings, plus observation of appellant for a period of approximately 300 days by the officer, was developed in the testimony. There is nothing suggested or referenced in the record by respondent concerning other criminal activity of appellant. The only direct evidence of another crime was presented by appellant when he injected the subject of the sale of L.S.D. The record reveals that appellant made a direct attack upon the credibility of the officer who identified this appellant. It was within context that the challenged testimony was presented. Appellant's point should fail on the merits for three specific reasons.

First, "It is hornbook law that proof of the commission of other offenses is competent to prove the specific crime charged if it tends to prove the identity of the person charged with the commission of that crime." *State v. Bellew,* 612 S.W.2d 401, 402 (Mo.App.1981); *State v. Carson,* 501 S.W.2d 503 (Mo.App.1973); *State v. Foster,* 608 S.W.2d 476 (Mo.App.1980). In the instant case, the officer's testimony did not (absent the testimony of the sale of L.S.D. injected by appellant) ever amount to proof of the commission of other offenses. Rather, it was a comment that appellant had been booked on two prior occasions and had been observed while incarcerated for 300 days. There were no details or elaboration of any prior offenses.

Secondly, when the entirety of the officer's testimony is considered, it is obvious that appellant, for purposes of challenging the credibility of the officer's testimony or identification of appellant, made such challenge partly by injecting direct reference to another crime, to wit, the sale of L.S.D. on April 3, 1980. This cannot be construed, as appellant contends, that the officer's testimony was so prejudicial as to warrant the granting of a mistrial.

Finally, the granting of a mistrial where a wrongfully made voluntary statement is

uttered by a witness, declaring a mistrial or granting a new trial on account thereof, especially after a thorough admonition by the court to the jury to disregard it, usually lies within the sound discretion of the trial judge." *State v. Morgan,* 593 S.W.2d 256 (Mo.App.1980); *State v. Reynolds,* 608 S.W.2d 422 (Mo.1980). The granting of a mistrial is a drastic remedy and should not be ordered unless prejudice, if any, cannot be removed by other remedial action. *State v. Jones,* 594 S.W.2d 932 (Mo.1980); *State v. Collins,* 607 S.W.2d 712 (Mo.App.1980). In the instant case, the trial court admonished the jury. Without further discussion concerning the challenge to the identification testimony and the injection by appellant of evidence of a separate criminal act by appellant, it suffices to conclude under the particular facts and circumstances of this case that the court's admonishment to the jury was sufficient. The trial court did not err in its refusal to grant a mistrial and appellant's point (1) should be found to be without merit.

Under point (2), appellant contends that the trial court erred upon refusing to grant a mistrial because of the expression of a personal opinion by the prosecutor. The challenged comment arose during final argument. *It must be pointed out that the challenged comment was within the second portion of respondent's final argument.* The comment upon which appellant claims he was entitled to a mistrial was:

> "Every undercover operation we've run has been a success. The prosecutor of this county, like all counties, is under a duty, a sworn duty, that if he believes in the innocence of the defendant, he has to make that known to the court and to his lawyer."

It is appellant's contention that such statement was highly prejudicial because it insinuated to the jury that there were facts outside the record from which respondent knew appellant was guilty. Respondent meets this contention by arguing that the above comment, plus other statements made during final argument concerning Officer Cartmill, were all directed to rebut appellant's attack upon the credibility of Officer Cartmill. Review of appellant's final argument reveals a direct attack upon the officer's credibility. The record shows: "Police officers sometimes line up against us other folks. And believe me, he (Cartmill) is biased and prejudiced and interested." This court should not agree that either the above referenced statement, nor the entirety of respondent's final argument, could be interpreted as suggesting that the prosecutor was aware of any evidence other than that about which the jury had been apprised.

The entire thrust of appellant's final argument was against the credibility of the officer's testimony. Indeed, in his brief, appellant states: "Credibility was the only real issue in this trial." In that context, respondent certainly had the right to confront that issue. Wide latitude is permitted in final argument and that includes comment upon the credibility of witnesses. *State v. Henderson,* 530 S.W.2d 382 (Mo. App.1975). A challenged statement within final argument must be reviewed and weighed with consideration for the context of the entire final argument, including the argument of the defense. *State v. Heinz,* 607 S.W.2d 873 (Mo.App.1980).

As observed above, this court should not agree with appellant's conclusion that the challenged statement "insinuated" to the jury that there were facts known to the prosecutor but undisclosed to the jury. In the instant proceedings, the only relief sought was a mistrial. Under the particular facts and circumstances of the instant case, it cannot be concluded that a declaration of mistrial was warranted. The trial court did not err in refusing to grant a mistrial. Appellant's point (2) is without merit and should be ruled against him.

Under point (3), appellant contends that the court erred in overruling his objection to, and in permitting the prosecutor to define reasonable doubt. Appellant's contention arises from the counsel-juror interchange during voir dire.

Appellant argues that the prosecutor defined reasonable doubt. Appellant references the following from the record:

"Q. (By Mr. Hensley): Ladies and gentlemen, under the law in the State of Missouri, no one in the case, including the Judge and myself and Mr. Duncan, is allowed to give you a definition of reasonable doubt. It is presumed by the lawmakers that you, as people of the community, know what reasonable doubt is. We're not allowed to define reasonable for you.

But, there are a few things which reasonable doubt is not. There are things which reasonable doubt—

MR. DUNCAN: Now, Your Honor, I'm going to object to that. If you can't define it, I don't think you can define it, period. And I would object to it. He's also lecturing the jury on the law, or what he thinks is the law.

THE COURT: Yes, and you object on that?

MR. DUNCAN: I object on that ground.

MR. HENSLEY: Your Honor, I just intend to state a few propositions that are in no way associated with reasonable doubt and ask any of the jurors if they have any misconceptions about what reasonable doubt is.

THE COURT: You may ask them any questions you wish, but, as to your statement, as to the objection, the objection is sustained.

Q. (By Mr. Hensley): Is there anyone who believes that a mere possibility, a mere possibility—

MR. DUNCAN: Objection, it's the same area, Your Honor.

THE COURT: Come up, please.

(Counsel approach the bench):

THE COURT: What's the question going to be?

MR. HENSLEY: The question is going to be is there anyone who believes that a mere possibility on the defendant's innocence would require them to acquit the defendant.

MR. DUNCAN: He's getting into the exact same area, Your Honor. It's an effort to get around the established law in the State of Missouri.

MR. HENSLEY: It in no way approaches the definition of reasonable doubt because it's totally erroneous.

(In the hearing of the jury panel):

THE COURT: The objection is overruled, proceed."

It is appellant's position that the foregoing is a definition of reasonable doubt prohibited under the rule in *State v. Belleville*, 530 S.W.2d 392, 394 (Mo.App.1975) wherein the reviewing court held the following statement by the prosecution to be improper, although not prejudicial: "[R]easonable doubt, under the law of the State of Missouri, has been defined as not merely the possibility of innocence, but as a substantial doubt touching upon defendant's guilt."

Appellant also contends that the instant case falls within the "faults" listed in *State v. Simmons*, 602 S.W.2d 13 (Mo.App.1980). Those faults include: a lengthy statement as compared with a short or concise question that the subject was dwelled upon, and that the statement consisted of a comparison between reasonable doubt and a substantial doubt, a mere possibility and a fanciful choice. It is appellant's further contention that the prosecution attempted to commit the jury to a finding of guilty.

Respondent meets appellant's argument with the direct rebuttal that the prosecutor did not improperly define reasonable doubt. Appellant points out further that the prosecutor attempted to ask two improper questions:

"Q. (By Mr. Hensley): Ladies and gentlemen, under the law in the State of Missouri, no one in the case, including the Judge and myself and Mr. Duncan, is allowed to give you a definition of reasonable doubt. It is presumed by the lawmakers that you, as people of the community, know what reasonable doubt is. We're not allowed to define reasonable doubt for you.

But, there are a few things which reasonable doubt is not. There are things which reasonable doubt—

MR. DUNCAN: Now, Your Honor, I'm going to object to that. If you can't define it, I don't think you can define it,

period. And I would object to it. He's also lecturing the jury on the law, or what he thinks is the law.

THE COURT: Yes, and you object on that?

MR. DUNCAN: I object on that ground.

MR. HENSLEY: Your Honor, I just intend to state a few propositions that are in no way associated with reasonable doubt and ask any of the jurors if they have any misconceptions about what reasonable doubt is.

THE COURT: You may ask them any questions you wish, but, as to your statement, as to the objection, the objection is sustained.

Q. (By Mr. Hensley): Does anyone believe that reasonable doubt can be anything other than a substantial doubt bearing on the guilt or innocence of the defendant?

THE COURT: And as to the question asked the objection is sustained."

When the trial court sustained appellant's objections to the foregoing questions, the line of inquiry which they attempted to pursue ceased.

Subsequent to the foregoing events, the prosecutor pursued a line of inquiry asking the jurors if they would be unable to convict if there was a mere possibility of innocence. The record reveals:

"Q. (By Mr. Hensley): Is there anyone who believes that a mere possibility, a mere possibility—

MR. DUNCAN: Objection, it's the same area, Your Honor.

THE COURT: Come up, please.

(Counsel approach the bench):

THE COURT: What's the question going to be?

MR. HENSLEY: The question is going to be is there anyone who believes that a mere possibility on the defendant's innocence would require them to acquit the defendant.

MR. DUNCAN: He's getting into the exact same area, Your Honor. It's an effort to get around the established law in the State of Missouri.

MR. HENSLEY: It in no way approaches the definition of reasonable doubt because it's totally erroneous.

(In the hearing of the jury panel):

THE COURT: The objection is overruled, proceed."

In Missouri, the prosecution is not permitted to define reasonable doubt. *Simmons* and *Belleville, supra.* This prohibition, however, does not include a discussion of reasonable doubt without the attempt to define it. *Simmons; State v. Fleming,* 577 S.W.2d 174 (Mo.App.1979). Rather, the prohibition forbids the prosecution undertaking "to define reasonable doubt in wholly erroneous terms." *State v. Jones,* 615 S.W.2d 416 (Mo.1981).

Questioning upon voir dire lies within the sound discretion of the trial court and absent an abuse of that discretion, the trial court's action will not be disturbed. *State v. Lumsden,* 589 S.W.2d 226 (Mo. banc 1979), cert. denied 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980).

This court should conclude, from a review of the entire voir dire, that the prosecution did not define reasonable doubt as prohibited, but rather, inquired to determine if any juror would be unwilling to convict unless absolutely convinced appellant was guilty. The two questions referenced above and ruled by the court were improper statements concerning reasonable doubt and a definition thereof. However, upon timely objection by appellant, the trial court sustained the objections and prevented the prosecutor from proceeding further. Nor should this court be persuaded by appellant's argument that the remainder of the voir dire was an improperly permitted erroneous definition of reasonable doubt. Both parties have a legitimate interest in obtaining a panel of jurors who will abide by their oaths and follow the court's instructions.

It can be observed from the record that the prosecutor, through the questions propounded, "was not explicit in comparing reasonable doubt to any doubt," a prohibition disowned in *Simmons,* but rather, within the questions propounded, it was stated that the inquiry was as to mere possibility.

Under the particular facts and circumstances of the instant case, this court should conclude there was no erroneous definition or attempt to define the term "reasonable doubt". Point (3) should be found to be without merit and ruled against appellant.

Under his final point (4), appellant charges trial court error in refusing to admit a defense exhibit. The particular exhibit was appellant's response to respondent's request for discovery. In that response, appellant set forth his intention to rely upon an alibi defense. Appellant's complaint centers upon the cross-examination of appellant's wife, which followed her direct testimony of alibi for the appellant. During cross-examination, over objection, it was determined that the wife had not informed the police or the prosecutor of appellant's alibi. Objection was lodged upon the basis of the pre-trial filing of appellant's response to discovery. On redirect, appellant's wife testified that she first told appellant's counsel of appellant's whereabouts on the night of the commission of the offense. Appellant made an offer of proof regarding the written response to respondent's request for discovery on the basis that the prosecution had implanted in the minds of the jury that appellant's wife had recently fabricated the alibi defense. The offer was denied by the trial court.

The record reveals that while the exhibit was marked for identification, it was not introduced into evidence. Such practice is to be discouraged. *McIntyre v. McIntyre,* 377 S.W.2d 421 (Mo.1964). This entire issue stems from respondent's cross-examination of appellant's alibi witness. The extent of cross-examination of witnesses comes within the discretion of the trial court. *State v. Patterson,* 598 S.W.2d 483 (Mo.App.1980). Certainly, under the particular facts and circumstances of the instant case, it was proper cross-examination to permit respondent to inquire of appellant's wife as to whether she had informed a police officer or the prosecution of her husband's alibi. Appellant, in response, attempted to read portions of his response for discovery. This procedure was denied by the court. The record further reveals, on redirect examina-

tion, that appellant's wife was asked and gave her explanation of why she did not advise the police or prosecutor of the alibi for her husband. Under all the facts and circumstances herein, it cannot be concluded that the trial court abused its discretion in permitting the cross-examination, nor in the refusal of the purported exhibit. Point (4) should be found to be without merit and ruled against appellant.

The judgment for the reasons set forth herein should be affirmed.