**STATE of Missouri, Respondent,**

v.

**Mark MICK and Steve Mick, Appellants.**

**Nos. WD 34770, WD 34771.**

Missouri Court of Appeals, Western District.

May 9, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 3, 1984.

Application to Transfer Denied Sept. 11, 1984.

Roy W. Brown, Kansas City, for appellants.

John Ashcroft, Atty. Gen., Dan J. Crawford, Jefferson City, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

After consolidated trial, a jury found Mark and Steve Mick guilty of stealing property having a value greater than $150. Section 570.030 RSMo. 1982. They each received sentences of six months imprisonment in the county jail and a fine of $500. On consolidated appeal the defendants challenge: 1) the sufficiency of the evidence submitted to the jury to convict them; 2) the submission of jury instructions relating to punishment; and 3) the court's failure to sustain objections to the prosecuting attorney's use of his personal opinion during closing argument.

The facts consistent with the jury's verdicts, viewed in a light most favorable to the state and disregarding appellants' evidence except that supporting the judgment of convictions, are as follows. On the evening of Saturday, April 3, 1982 and continuing onto the next morning, defendant Steve Mick drove a group of people in a car from Holt, Missouri to the town of Osborn, Missouri. The group included defendant Mark Mick (Steve's cousin), Gaylen Johnson and Liza Johnson, among others. Liza Johnson testified on behalf of the state. In Osborn, a population of 385, Steve stopped the car and dropped Mark and Gaylen off by the municipal water plant. Steve drove around for ten minutes and then returned to about a block away from the water plant where Mark and Gaylen waited to be picked up. At that time they carried a tool box which was placed in the trunk of the car. Steve drove the group back to Gaylen's house in Holt, where Mark, Steve and Gaylen all

carried the tool box out of the car and into the house, where it was left. Liza saw that the box contained a mask and some wrenches. Neither Steve nor Mark Mick resided at Johnson's house.

William Lamar, a part-time worker for the Osborn Water Department, checked the water plant daily. Sometime after the break-in, he noticed that the door to the plant had been left open and a window broken. He contacted a city council member who called the sheriff's office of De-Kalb County. Mr. Lamar examined the plant and learned that several tools, numerous brass fittings and items for water service hook-ups were missing. He also noticed a gas mask missing, although the box used to store the mask had been left intact. He estimated the value of just the missing fittings and wrenches as being over $400. He testified that no one was authorized to take any of the city property during the weekend of April 3–4. Dean Sprague, the Mayor of Osborn, learned of the break-in and also inspected the water plant. He determined that some pipe wrenches, a gas mask, and an unknown amount of brass fittings were missing, which he valued at approximately $350.

The deputy sheriff for Clinton County, David Owen, obtained a search warrant for Gaylen Johnson's house upon information supplied by Liza Johnson to law enforcement authorities. The warrant was served on May 5. Among other items, Sheriff Owen found and seized a pipe wrench and a gas mask on a workbench in Johnson's basement. A second pipe wrench was found near a back step leading to the upper level of the house.

At trial the state offered the gas mask into evidence as Exhibit 1 and three pipe wrenches as Exhibit 2. They were identified by Sheriff Owen as the items seized under the search warrant. When the state asked Lamar to identify Exhibit 1, he responded, "[i]t appears to be identical to the gas mask we had stored in the water plant." Mayor Sprague identified Exhibit 1 as "just like" the mask missing from the water plant, although he also stated the missing mask had additional parts, a cannister and straps, that Exhibit 1 lacked. In response to the state's question posed to Lamar whether he recognized the state's Exhibit 2, he responded, "They're identical wrenches to the ones that were taken from the water plant." Mayor Sprague identified State's Exhibit 2 as standard pipe wrenches which were new. Testimony by both Sprague and Lamar revealed that the wrenches had been purchased shortly before the break-in. Liza Johnson testified that state's Exhibit 1 "resembled" the gas mask she saw appellants help carry into Johnson's house. As to Exhibit 2, she testified, "Those are the wrenches that was in the tool box."

Under point one appellants contend the court erred in failing to sustain the defendants' motion to dismiss at the close of the evidence for three reasons. First, the date and time of the alleged stealing was not sufficiently established by the evidence. Secondly, the state's exhibits one and two have no probative value and "at best, do no more than raise a mere suspicion of guilt." Third, they argue the testimony of Liza Johnson is so inconsistent as to vital and material issues in the case that it cannot constitute substantial evidence to support the conviction.

■■■ Defendants have a due process right to be convicted of the charges only after the state has offered evidence upon which a reasonable trier of fact can find the elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *State v. Huffman*, 659 S.W.2d 571, 573 (Mo.App.1983). In a case resting entirely on circumstantial evidence, the facts and circumstances relied upon by the state to establish guilt must be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent with every reasonable hypothesis of innocence. *State v. Murphy*, 356 Mo. 110, 201 S.W.2d 280 (Mo. banc 1947). However, the circumstances need not demonstrate the impossibility of innocence nor be absolutely conclusive of defendant's

guilt. *State v. Shaw*, 602 S.W.2d 17, 19 (Mo.App.1980).

■ With respect to the time of the offense, the information charged both defendants with stealing "on or about April 4, 1982," (a Sunday). The defendants have never made any attack on the validity of the informations or as to their being defective under § 545.030, or impairing their ability to defend the charges. *State v. Moore*, 642 S.W.2d 917, 923 (Mo.App.1982). Liza Johnson testified to events that occurred on either the evening of April 3 or early morning of April 4. The witness' inability to precisely recall the hour in which appellants visited the water plant can hardly be deemed fatal to the convictions. Time was not the essence of the offense nor did appellants demonstrate any prejudice. *See* Rule 23.11; *State v. Newhart*, 539 S.W.2d 486, 490 (Mo.App. 1976).

With respect to the state's exhibits one and two, appellants object to the lack of any evidence pinpointing the gas mask and wrenches as the items missing from the water plant. They argue "this type of evidence *alone* is not sufficient to support a finding of guilt beyond a reasonable doubt." (Emphasis added.) Reliance upon *State v. Greer*, 655 S.W.2d 593 (Mo.App. 1983) and *State v. Thompson*, 428 S.W.2d 742 (Mo.1968) reveals the fallacy to appellants' argument. In *Greer*, the defendant was charged with the theft of a John Deere Model 400 lawn tractor belonging to a cemetery association. The sum of the state's evidence linking the defendant to the theft consisted of proof that defendant was observed to have been in possession of a tractor having a similar make and model to the recently stolen tractor. The stolen tractor was never recovered nor was the defendant observed at any time to have been near the cemetery. In *Thompson*, the state's case rested solely on the identification of a wallet and black leather gloves found on the defendant's person as being "exactly like" the allegedly stolen articles. The court noted that no evidence existed that the defendant was ever near the home in which the burglary had been committed.

The court held that the circumstances that the articles were "exactly like" those of the victim of the theft was not substantial evidence inconsistent with a reasonable hypothesis of defendant's innocence. "The most that can be said for this evidence," the court noted, "is that it is consistent with guilt and casts a suspicion, but the law requires more than that." 428 S.W.2d at 744.

■ Unlike *Thompson* and *Greer*, the state's case here did not rest solely upon the positive identification of the alleged fruits of the crime, and the evidence linking appellants to the theft of the tools rises above mere conjecture and suspicion of guilt. The testimony of Liza Johnson placed appellants at the scene of the break-in. She witnessed their possession of a tool box at the water plant, later determined to contain a gas mask and wrenches. *See State v. Hines*, 567 S.W.2d 740, 742 (Mo.App.1978); *State v. Sloan*, 548 S.W.2d 633, 639 (Mo.App.1977). Ms. Johnson testified that state's exhibit 1 "resembled" the gas mask she had seen carried into the Johnson basement, and that exhibit 2 "[was] the wrenches that was in the tool box." Witnesses Lamar and Sprague stated Exhibit 1 appeared to be "identical" and "just like" the missing gas mask from the water plant. Lamar had been responsible for the purchase of the new wrenches. The identification of alleged fruits of a theft "must be by the most direct testimony of which the case is susceptible." *Greer*, 655 S.W.2d at 594. The tools bore no identification marks nor were they particularly unique. Also of note is the fact that a gas mask, an item not normally found in a private home, was obtained in the search of the Johnson home, its presence there unexplained. Under the circumstances, the witnesses' identification of the exhibits was sufficient authentication for their admission into evidence to be considered as the property stolen from the water department. *See Sloan, supra.*

■ Relying on *State v. Shaw*, 602 S.W.2d 17, 19 (Mo.App.1980), appellants present a third argument that attacks the

testimony of Liza Johnson as containing "blatant inconsistencies which directly affect vital and material issues." In *Shaw*, the court stated that "inconsistencies in the testimony of a single witness going to a vital and material issue in the case will be scrutinized closely by the court in determining whether or not such testimony constitutes substantial evidence." 602 S.W.2d at 19, 20. First appellants point to inconsistencies in Ms. Johnson's testimony concerning Steve Mick's participation in carrying the tool box from the car to Gaylen Johnson's basement. On direct examination she testified that Steve helped Mark and Gaylen carry the tool box into the basement of Johnson's house. On cross-examination, the following transpired:

Q. There isn't any question as far as Steve Mick is concerned. He never touched any of these tools; that's correct, isn't it?

A. I suppose.

On redirect:

Q. And did Steve Mick help either Gaylen or Mark Mick carry any of these things into Gaylen's place?

A. Yeah, I think so.

On recross-examination:

Q. Which one of these three didn't carry something out of that trunk.

A. I really ain't for sure.

Any inconsistencies in Ms. Johnson's testimony were fact questions to be determined by the jury. *State v. Donahue*, 625 S.W.2d 947, 949 (Mo.App.1981). Steve Mick's participation in carrying the tool box into the house was not a "vital issue" in light of his complicity in dropping off Mark and Gaylen at the water plant, picking them up, and helping to place the tools into the car.

■ The appellants also point to inconsistencies in Ms. Johnson's testimony concerning the description of the tools. They complain that the witness described a closed metal tool box with a lid on it and only after it was opened could she describe the tools contained therein. How any delay in observing the contents of the tool box until after it was opened made her testimony inconsistent is not understood. A person may testify to events that were not known to the witness at the time of the observation but which do become apparent at a later time. The fact that Ms. Johnson only remembered seeing some of the items that appellants were charged with stealing only goes to the weight of her testimony. It was entirely permissible for the jury to infer from the appellants' possession of some of the missing items that they had stolen the rest of the missing property. *State v. Brame*, 542 S.W.2d 591, 594 (Mo. App. 1976). Liza Johnson lived with Gaylen for a period of time preceding the alleged theft of the water plant. She had accused Gaylen of assaulting her shortly before bringing the activities of April 3 and 4 to the attention of Sheriff Osborn. Her potential bias was fully explored by the appellants' attorney on cross-examination; the jury obviously chose to believe her testimony. The state's evidence, including her testimony, was substantial evidence that excluded all reasonable hypotheses of the defendants' innocence, and Point I is ruled against the appellants.

■ Under Point II appellants claim error in allowing the jury to assess and declare punishment as "imprisonment in the county jail or other authorized penal institution for a term fixed by you, but not to exceed one year." They argue that § 558.-011.2 RSMo. 1982 dictates that the authority to declare punishment in the county jail rests exclusively with the court. The court instructed the jury according to the applicable pattern instruction, MAI–CR 2.04, 1983 Revision. This court is not free to declare as erroneous instruction forms adopted by the Supreme Court for standard use. *State v. Grady*, 577 S.W.2d 930, 931 (Mo. App. 1979). The instruction was mandatory. *State v. Simpson*, 614 S.W.2d 31, 32 (Mo.App. 1982). Point II is without merit.

Under Point III the appellants claim error in the trial court's failure to sustain objections to the prosecuting attorney's repeated phrasing of his closing argument in terms of "I think" or "I disagree" or "in

my opinion." They argue this had the effect of lending his personal opinion as buttressed by the strength of his office to the evidence presented and resulted in prejudice. In their brief appellants concede that the prosecutor confined his argument to the evidence introduced at trial and the permissible inferences drawn from the evidence, and therefore this opinion need not recapitulate what was argued to the jury.

■ A review of the record indicates that the prosecutor did not exceed the bounds of permissible closing argument. Unlike *State v. Hodges*, 586 S.W.2d 420, 427 (Mo.App. 1979), relied upon by appellants, the prosecutor did not apply any personal epithets to the defendants or otherwise abuse them, nor seek to inflame or appeal to the jury's passions. Nor did the prosecutor seek to persuade the jury to decide the case on any basis other than upon their evaluation of the evidence. The argument presents a stark contrast to that of *State v. Bramlett*, 647 S.W.2d 820, 822 (Mo.App. 1983), wherein the prosecutor implied in his closing argument that he had a sworn duty to candidly disclose to the jury any basis for acquitting the accused if such a basis existed. The appellants here, however, admit the prosecutor did not wander from nor distort the evidence produced at trial and the permissible inferences therefrom. *Id.*

The judgment is affirmed.

All concur.