**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Michael Paul SMITH,
Defendant-Appellant.**

**No. 12261.**

Missouri Court of Appeals,
Southern District,
Division One.

March 17, 1982.

Motion for Rehearing or to Transfer
to Supreme Court Denied
April 8, 1982.

Application to Transfer Denied
May 17, 1982.

John D. Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

G. Michael Baker, Springfield, for defendant-appellant.

GREENE, Presiding Judge.

Defendant, Michael Paul Smith, was jury-tried and convicted of the class A felony of robbery in the first degree, § 569.020, RSMo 1978, and thereafter sentenced to 30 years' imprisonment in accordance with the jury verdict. This appeal followed.

Viewed in a light most favorable to uphold the jury verdict, the evidence shows that on December 25, 1980, at about 6:00 p. m., Deborah Hammers was working as a store clerk at the Pic N Pay Market at 1161 West Division in Springfield, Missouri. A man entered the store, picked up a six-pack of beer from the back beer cooler and approached Ms. Hammers, who was standing at the counter. The man pulled a gun and demanded that Ms. Hammers give him all of the money in the cash register. He threatened to shoot her if she did not comply. She opened the cash register and gave the robber all of the money that it contained, which amounted to about $150. The robber did not have anything covering his face, the store was well lighted, and Ms. Hammers had about three minutes to observe the robber. The robber was within three feet of the victim when she took the money from the cash register.

Two days later, the robbery victim was shown six photographs by a police officer, Ray Fite, to see if she could identify "the person who robbed me." The officer did not say anything to her that suggested that any one of the men portrayed in the photo-

graphs was the robber. She tentatively identified one of the photographs, which was a picture of the defendant, but she could not be "one hundred per cent sure." Four days later, Fite showed her six other photographs, one of which was a different picture of defendant showing side and front views. Ms. Hammers identified defendant's photograph as a picture of the man who robbed her. Again, nothing was said by Fite to indicate that any one of the men portrayed in the photographs was the robber. In court, she positively identified defendant as the person who had committed the robbery. She also identified a picture of a pistol purchased at a local gun shop by defendant and his brother the day before the robbery as looking exactly like the pistol used by the robber during the holdup.

Other corroborating testimony was that ownership of the automobile, used by the robber during his flight from the scene, was traced to a relative of the defendant. An on-the-scene witness had obtained the license number of the vehicle and had given the number to the police.

On appeal, defendant's first point relied on is that the trial court abused its discretion in not directing a mistrial following a comment by the prosecuting attorney during voir dire when he said "that the defendant is presumed innocent until a jury finds him guilty", for the reason that such comment implied that defendant was guilty and that the trial was only a formality. The full text of the complained of language, defense counsel's objection, and the trial court's response is as follows:

"Mr. Aiken: The defendant, Michael Paul Smith, stands here presumed innocent. He is innocent until a jury returns a finding of guilty. The fact that the defendant is charged is not evidence. It is not evidence in the least. Is there anyone have anyone have any problem with that?

Mr. Baker: Your Honor, may I approach the bench?

The Court: All right.

(The following was at the bench.):

Mr. Baker: Your Honor, I want to make an objection to the statement dur-

ing voir dire. I've let Mr. Aiken go quite far and I feel I have to object to this last statement that the defendant stands innocent until the jury returns a verdict of guilty, which is not the case. That doesn't properly state the law. It doesn't include the statement that the state has to prove the charge against him beyond a reasonable doubt. And it implies that it is just merely a formality and that as we are sitting here the defendant is guilty. And at this time, I object and move for a mistrial and ask that the whole jury panel be quashed.

The Court: The objection to the last question is sustained. The motion for a mistrial is denied. Mr. Aiken, what are you trying to elicit by your question?

Mr. Aiken: Judge, it's not merely a question of reasonable doubt. I was just trying to make sure that everyone accepted the defendant as being innocent, the fact that they wouldn't feel that the charge—the fact that he has been charged wouldn't prejudice them.

The Court: Well, I believe you've had a fair opportunity to inquire along those lines. Why don't you move on to other areas of inquiry?

Mr. Aiken: O.K.

The Court: Let's move on."

Even if the voir dire statement of the prosecutor was improper, the drastic remedy of mistrial should not be granted unless the prejudice of the remarks cannot be removed by other remedial action. *State v. Jones*, 594 S.W.2d 932, 937 (Mo.1980). The trial court has great discretion in deciding whether unwarranted prosecutorial conduct is so prejudicial that a mistrial is the only appropriate remedy. *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo.1970). In this case, we do not feel that the trial judge abused his discretion in denying the request for mistrial. It is evident that the prosecuting attorney was not promoting prejudice by the remarks in question, even though his choice of language could have been better. The point is denied.

Defendant's second point is that the trial court erred in overruling his motion to suppress the identification testimony of Debo-

rah Hammers for the reason that such identification testimony was "tainted." His reasoning is that the two photographic displays shown to Ms. Hammers were unduly suggestive because a photograph of defendant was in each display. He argues that she did not identify the photograph of defendant in the first display, but did so in the second because she remembered a picture of defendant being in the first display.

■ Even if we assumed that the photographic displays were unduly suggestive, which we do not, the personal observation of the robber by Ms. Hammers at the time of the robbery, was more than sufficient to provide an independent basis for identification. The robber was not masked, and the witness observed him, under bright lights, for a period of about three minutes, at distances as close as three feet. That observation, under those conditions, provided an adequate independent source to insure reliability of her in-court identification of defendant as the robber. *State v. Strickland*, 609 S.W.2d 392, 396 (Mo. banc 1980). The point is denied.

■ Defendant next contends that it was error for the trial court to admit into evidence the photographs of defendant which had been a part of the two photographic displays viewed by Deborah Hammers. He claims the photographs were not relevant, and that they improperly bolstered the unimpeached testimony of Deborah Hammers concerning the identification of defendant as the robber. Defendant does not cite any cases to sustain his theory, and we know of none. The only contested real issue was whether Ms. Hammers had correctly identified defendant as the robber. Photographs are admissible in evidence if they are relevant to the issue of identification. *State v. Irvin*, 590 S.W.2d 699, 700 (Mo.App.1979). Defendant was questioning his identification by Ms. Hammers. The photographs were admissible to aid the jury in assessing the weight to be given to the robbery victim's identification testimony. See *State v. Carter*, 557 S.W.2d 47, 51 (Mo.App.1977). The point is denied.

Defendant next contends that the trial court erred in admitting into evidence the testimony of Police Officer Fite concerning the two photographic displays he had submitted to Deborah Hammers to see if she could identify any of the persons portrayed as being the robber.

■ In Fite's testimony on this issue, he identified the two groups of photographs that he had assembled and submitted to the robbery victim. He was not asked on direct examination if she had identified any of the persons depicted as being the robber. On cross-examination, he was asked if each group of photographs contained a photograph of defendant, and he answered, "Yes." On redirect, he testified that Ms. Hammers said, after examining the first group, "that one of the photographs appeared similar to, but she could not a hundred per cent say that any of those photographs were the person that . . . ." This answer was not objected to. From this testimony, defendant concludes prejudice, citing *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972) as support for his conclusion. *Degraffenreid* is not in point. That case held that it is prejudicial error for a police officer to testify that a witness had identified defendant by means of a photograph, and had later identified him again by picking him out of a lineup, absent any impeachment, during trial, of the identifying witness' identification testimony. No such facts are present here. The rule in *Degraffenreid* does not foreclose a police officer from testifying that he prepared a photographic display, and submitted it to a witness for examination. *Thompson v. State*, 606 S.W.2d 263, 265 (Mo.App.1980). Officer Fite's testimony on this issue was admissible. The point is denied.

■ Defendant's next point is that there was insufficient evidence to prove beyond a reasonable doubt that defendant was guilty as charged. We disagree. Even if the identification of defendant by Ms. Hammers as the robber had been uncorroborated, that evidence, standing alone, would have been sufficient to sustain the conviction. *State v. Johnson*, 595 S.W.2d 774, 776 (Mo.App.1980). The issue of identity was for the jury. *State v. Timmons*, 584 S.W.2d 129, 133–134 (Mo.App.1979). The point is denied.

Defendant's final point of claimed error is the refusal of the trial court to give defendant's Instruction "A", which was a cautionary instruction regarding identification testimony.[1] The instruction was approved in *United States v. Telfaire*, 469 F.2d 552, 558–559 (D.C.Cir.1972). The so-called "Telfaire" instruction has been offered and properly refused many times by Missouri trial courts. *State v. White*, 617 S.W.2d 596, 597 (Mo.App.1981). Defendant's Instruction "A" violates Rule 28.02(d), V.A.M.R., by not being simple, brief, impartial, and free from argument. *State v. Smith*, 607 S.W.2d 737, 739 (Mo.App.1980). Its refusal was proper. The point is denied.

The judgment is affirmed.

All concur.

1.      "INSTRUCTION NO. A

One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The State has the burden of providing identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

(3) You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification, that was inconsistent with his identification at trial.

(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden or proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty."