STATE of Missouri, Respondent,

v.

Randall Michael RENNER, Appellant.

No. 46746.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 14, 1984.

Richard H. Sindel, Clayton, for appellant.

John Ashcroft, Atty. Gen. by Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

A jury convicted defendant of murder, second degree. The court sentenced defendant to life imprisonment. Defendant appeals. We affirm.

Defendant had arranged with the deceased, R.J. Andrews (Andrews), to buy marijuana from Andrews. Defendant went to Andrews' house at approximately 12:30 p.m. He was let into the house by Andrews' girlfriend, Susan Baroli. After a period of conversation with defendant and Andrews, Miss Baroli left the house. She returned approximately one-half hour later. At this time defendant and Andrews were talking in the living room. Miss Baroli left once again to run errands and visit a girlfriend. She arrived at her girlfriend's house at approximately 3:00 p.m. While there, she tried to phone Andrews but could not reach him. She returned to Andrews' house and found Andrews lying dead in a hallway. The autopsy showed that Andrews' death had been caused by three gunshot wounds to the head, fired at close range.

Defendant testified in his own behalf. He admitted killing Andrews. He claimed, however, that the killing was done in self-defense. Additional facts will be related when necessary to address the particular issues raised by defendant.

■ Defendant complains about the late endorsement of two witnesses, Frank Stubits (Stubits) and Joseph Bono (Bono). Prior to these endorsements, the state had endorsed James Simpson, a ballistics expert for the St. Louis County Police Department. Simpson's testimony and report were to be used to prove that a revolver shown to be in defendant's possession fired a bullet removed from Andrews' body and also to prove that three shell casings found in the revolver were fired by the revolver. After endorsing Simpson, the state turned over his report to defendant's trial counsel.[1] Some time prior to trial—the exact date is not shown in the record—the state learned Simpson had left the County Police Department. Four days prior to trial, the state endorsed Stubits, a ballistics expert for the St. Louis City Police Department. The state informed defendant's trial counsel that Stubits was to perform the same ballistics tests that Simpson had performed.[2] Then, on the day trial began, the state endorsed Bono, the forensic laboratory supervisor for the County Police Department.

At trial, Bono was called as the custodian of Simpson's report. The report was marked, Bono testified as to its contents, and the report was admitted into evidence. Subsequently, Stubits was called. Based upon his tests, his opinion was the same as Simpson's.

On appeal, defendant contends he was prejudiced by these late endorsements. More specifically, he argues he was precluded from preparing for effective cross-examination of both Stubits and Bono: Stubits had completed his tests just prior to trial, and Bono could not be cross-examined sensibly about Simpson's findings. We have examined the record and find the trial court did not abuse its discretion in permitting the endorsements in question.

■ Rule 23.01(f) requires the state to endorse its material witnesses upon the filing of the indictment or information. This Rule, however, also authorizes the trial court to permit endorsement of addition-

---

1. The prosecutor made this statement at a pretrial conference in the judge's chambers. Neither defendant's trial counsel nor his counsel on appeal dispute this statement.

2. Again, this is an undisputed statement made by the prosecutor at the pre-trial conference.

al witnesses upon notice to the defendant. In the final analysis, the propriety of late endorsements of witnesses depends upon the discretion of the trial court. *See, e.g., State v. Strawther*, 476 S.W.2d 576, 579 (Mo.1972). Several factors are taken into consideration in determining whether the trial court abused its discretion in permitting the late endorsement of witnesses. These factors include whether the "defendant waived the objection; whether the state intended surprise or acted deceptively or in bad faith, with intention to disadvantage the defendant, ... whether in fact defendant was surprised and suffered any disadvantage, ... and whether the type of testimony given might readily have been contemplated." (Citations omitted). *State v. Stokes*, 638 S.W.2d 715, 719–20 (Mo. banc 1982), *cert. denied*, 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983); *State v. Strawther*, 476 S.W.2d 576, 579–80 (Mo. 1972). *See also State v. Dodson*, 572 S.W.2d 188, 189 (Mo.App.1978); *State v. Smith*, 556 S.W.2d 70, 72 (Mo.App.1977).

Defendant here has the burden of showing the trial court abused its discretion in permitting the late endorsement of Stubits and Bono. Defendant has failed to sustain his burden. The facts do not show harmful surprise, unanticipated testimony or bad faith on the part of the state.

Stubits was simply a substitute witness for the state. The state had anticipated using Simpson as its ballistics expert and had given the defense a copy of Simpson's report. When Simpson became unavailable, Stubits, as his temporary successor, was substituted as a witness and performed his own, but similar, ballistics tests. Moreover, in a murder case involving a gun, it is natural to expect expert testimony on ballistics at trial. Hence, it is difficult to see how defendant could have been surprised by the nature of Stubits' testimony. Defendant could have been surprised

only by the identity of the witness, not by the substance of the testimony. *See, e.g., State v. Smith*, 556 S.W.2d 70, 72 (Mo.App. 1977). The identity of the substituted witness itself could not work any prejudice against defendant. *Id. See also State v. Dodson*, 572 S.W.2d 188, 189 (Mo.App. 1978).

Moreover, the record does not show that defendant's trial counsel made any attempt to depose Simpson, the state's initial ballistics expert. Furthermore, during the four days between the endorsement of Stubits and trial, no attempt was made to depose Stubits. Finally, we note the objection to Stubits endorsement was made at the pretrial conference along with objections to the late endorsement of two other witnesses. Defendant's trial counsel considered requesting a continuance because of the late endorsement of these other two witnesses, but, apparently, no such consideration was given to the endorsement of Stubits. Accordingly, we do not find the late endorsement of Stubits prejudiced defendant.

■ Defendant's complaint about Bono's endorsement is disposed of by a similar analysis. The reason for the objection to Bono's endorsement does not appear in the record, nor, for that matter, with Stubits' testimony available, does the state's reason for endorsing Bono appear. In any event, at best, Bono's testimony was merely corroborative of Stubits' testimony, and no objection was made to his endorsement on this ground. Under these circumstances, we do not find Bono's late endorsement prejudiced defendant.

■ Defendant also contends the court erred in refusing to give the jury instruction MAI–CR2d 3.54. This instruction tells the jury how to evaluate prior consistent statements of a defendant in determining his credibility.[3] If supported

---

**3.** MAI–CR2d 3.54 reads:

"If you find and believe from the evidence that on some former occasion the defendant made a statement consistent with his testimony in this case, you may consider such evidence for the purpose of deciding the believa-

bility of the defendant and the weight to be given to his testimony. However, in deciding his guilt or innocence, any prior statement of the defendant consistent with his testimony must not be considered by you as evidence of the matters contained in the statement."

by the evidence, the instruction must be given when requested, Rule 28.02(a). *See, e.g., State v. Crews,* 585 S.W.2d 131, 135–36 (Mo.App.1979). Defendant argues the evidence supported the instruction and, thus, his request for it should not have been denied. We disagree.

During the state's case, a Detective Burris testified that, in a statement made to the police, defendant said he feared for his life while he was in Andrews' house. During direct examination, defendant repeated this fear, stating he felt he should shoot or else be shot. He also stated that he had borrowed the gun in his possession. On cross-examination, however, he admitted he had told the police the gun was his rather than telling them he had borrowed it.

Based upon this evidence, defendant, in effect, argues the court improperly applied the rules on order of proof. Defendant admits he was impeached. He reasons, however, that his prior consistent statements were part of the record through Detective Burris' testimony, and, thus, he should not be required to recall Burris to repeat the same testimony in order to be rehabilitated and to provide a proper foundation for giving MAI–CR2d 3.54. Moreover, defendant contends, the prejudice worked against him by the trial court's refusal to give this instruction was compounded by the court giving MAI–CR2d 3.52, which instructs the jury how to evaluate prior *inconsistent* statements.[4]

Defendant's argument is misdirected and, thus, misses the mark. Admittedly, a prior inconsistent statement introduced to impeach a witness may be rebutted by the introduction of a prior consistent statement to rehabilitate the witness. *See, e.g., State v. Earvin,* 539 S.W.2d 615, 616 (Mo.App.1976). However, to be admissible for rehabilitation, the prior consistent statement must be relevant to the inconsistent statement. *State v. Fleming,* 354 Mo. 31, 188 S.W.2d 12, 16 (1945). *See also State v. Morris,* 639 S.W.2d 589 (Mo. banc 1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). As the Court stated in *State v. Fleming:* L.C. 16

> "even though the witness be impeached by prior inconsistent statements, extrajudicial prior consistent statements on subject matters foreign to that on which the witness was impeached remain incompetent and inadmissible."

Defendant here rests his argument on the rehabilitative effect of prior statements which are foreign to the impeaching statement. As noted, on direct examination, defendant testified he borrowed the gun in his possession. On cross-examination, he was impeached by his prior inconsistent statement to the police that the gun was his. If defendant were to be rehabilitated from this impeachment, his trial counsel would have had to introduce a prior statement made by defendant that he owned the gun. The present record does not disclose this prior consistent statement.

The prior statements defendant refers to in his brief are statements made by defendant to Detective Burris, which Burris testified to in the state's case. These statements, however, related to defendant's fear of being shot by Andrews.[5] They did not

---

4. MAI–CR2d 3.52 reads:

"If you find and believe from the evidence that on some former occasion a witness made a statement (inconsistent) (consistent) (inconsistent or consistent) with his testimony in this case, you may consider such evidence for the purpose of deciding the believability of the witness and the weight to be given to his testimony. However, in deciding the guilt or innocence of the defendant, any prior statement of the witness must not be considered by you as evidence of the matters contained in the statement (except as to those matters admitted by the witness to be true during his testimony in the case)."

5. We agree with defendant's synopsis of these statements. According to defendant, Burris testified that "Defendant had told him that he had been threatened by the deceased; that the deceased at the time of the shooting was getting hostile; that the deceased at the time of the shooting was demanding the balance of money Defendant owed him; that the Defendant felt the deceased was going to 'reach around and grab a gun and blow his head off'; that the Defendant was afraid of being killed; and that Defendant felt if he had not shot the deceased, [the deceased] would have shot him." A tape of the defendant's statement was also played to the

relate to the inconsistent, impeaching statement in question—defendant's ownership of the gun. Since these prior statements are irrelevant to the inconsistent, impeaching statement, they cannot be used to rebut the effect of the impeached testimony. In short, the prior statements relied on by defendant are not the prior consistent statements contemplated by MAI–CR2d 3.54. Thus, the trial court did not err in refusing defendant's request to give this instruction.[6]

Judgment affirmed.

SIMON, P.J., and KAROHL, J., concur.

jury. This tape is not part of the record on appeal.

6. We do not reach the question of proper order of proof.