**STATE of Missouri, Respondent,**

**v.**

**Raymond GLASS, Appellant.**

**No. 48282.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 31, 1985.

Allen I. Harris, St. Louis, for appellant.

William L. Webster, Atty. Gen., Victorine R. Mahon, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his jury conviction for burglary in the second degree and stealing, for which he was sentenced, by the court as a prior and persistent offender, to consecutive terms of eight years' imprisonment for the burglary conviction and two years imprisonment for the stealing conviction. We affirm.

On the afternoon of November 6, 1982, Mr. and Mrs. Tyler, the victims, residents of California travelling through St. Louis on vacation, were visiting the Planetarium. While inside the planetarium, Mr. Tyler noticed someone was inside their mobile home. Mrs. Tyler went to get help as Mr. Tyler ran to the mobile home. He saw a man exit with an armful of "stuff" which he threw into the open trunk of a waiting car, which he then entered and started. Mr. Tyler then entered the car from the passenger side and turned off the ignition. The man then got out and ran around the car with Mr. Tyler pursuing, but the man was too quick, and was able to get back inside the car, and lock Mr. Tyler out.

Mrs. Tyler, by then, had exited the Planetarium, after seeking help, and took some pictures before the man drove off. These pictures showed the car, which was determined to have been leased to a woman living at the same address as defendant. Also, one of the pictures showed the perpetrator, who was recognized by a detective as defendant.

About two months later, those two pictures were mailed to victims so they could identify, for the trial, the pictures as those they took. At about the same time, a picture of the line-up was sent to the victims, who identified defendant, one of the four people in the line-up, as the perpetrator. It is not clear whether the pictures taken by the victims were sent with the picture of the line-up or whether they were sent separately. The police report reflects both the pictures taken by victim and the line-up pictures were sent, but is silent as to whether they were sent together or separately. The victims denied seeing the photographs when they were examining the line-up photograph.

Defendant, in his first two points on appeal, attacks the victim's identification of him as the perpetrator of the crime. He claims the identification of defendant at trial was inherently unreliable, and therefore should have been suppressed, or the court should have given the jury two instructions concerning the dangers of eyewitness testimony. The identification is claimed to be unreliable due to the short length of time and the emotional circumstances involved in the incident, because the victims' description of defendant was extremely general, and the lapse of time between the crime and photographic line-up prejudiced the defendant. Additionally, the photographic line-up is insinuated to have been impermissibly suggestive because of the possibility victims had their photographs of the perpetrator to refer to when they were making their identification, which is alleged to have been prejudicial because defendant was a very average looking black male, and any type of suggestion was likely to be irreparable.

■ We find no merit in either point. First of all, no irreparable suggestiveness occurred simply because victims had those photographs of the perpetrator available when they identified defendant from the line-up photograph, if indeed those photographs were available to victims at that time. Even assuming, however, this was a suggestive circumstance, the inquiry continues, because "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

The reliability of the victims' identification of defendant is assessed upon a consideration of the "totality of the circumstances." In making this determination, such factors as the witnesses' opportunity to view the perpetrator and their degree of attention at the time of the occurrence, the accuracy of the prior description of the perpetrator, the length of time between the incident and the identification, and the degree of certainty concerning the identification, are weighed. *State v. Hood*, 680 S.W.2d 420, 422 (Mo.App.1984). Both victims had ample opportunity to observe defendant after their attention was focused on the burglary. The physical confrontation between defendant and Mr. Tyler lasted two or three minutes; Mrs. Tyler was present when her husband chased the defendant around the car. *See State v. Bockes*, 676 S.W.2d 272, 277[6] (Mo.App. 1984). The crime took place in the afternoon, when the lighting conditions were apparently good. The prior descriptions of the perpetrator, which are equivalent to those in *State v. Taylor*, 661 S.W.2d 794, 799 (Mo.App.1983), are conceded to accurately, if generally, describe defendant, who is apparently an average looking individual without any outstanding features. Identification at trial, which occurred less than one year after the incident, was positive, and the photographic identification occurred approximately two months after the occurrence. *Compare, State v. Little*, 674 S.W.2d 541 (Mo. banc 1984) (Over four months until initial photographic identification.) Considering all the circumstances, the contention victims' identification of defendant was unreliable is without merit.

Defendant next claims error in the court's refusal to give to the jury a non-MAI cautionary instruction concerning eyewitness identification.

Use of cautionary instructions on identification is a matter which is left to sound discretion of the trial court. *Williams*, 674 S.W.2d at 48[4]. The questions of the identification and possibility of misidentification were extensively explored in direct examination, cross-examination and closing arguments by counsel. Given such coverage, there was no abuse of discretion in refusing to give the cautionary instruction. *Id.* Further, one of the instructions was modeled upon an instruction presented first in *United States v. Telfaire*, 469 F.2d 552, 558–59 (D.C.Cir.1972). This instruction has been consistently held to be properly refused as it violates Rule 28.02(d). *State v. Smith*, 632 S.W.2d 36, 40[7] (Mo. App.1982).

In his final point relied on, defendant claims the trial court erred in failing to declare a mistrial upon discovery of an error in timing closing arguments. It was agreed each party would have twenty minutes' summation. After the arguments were concluded and the jury had retired for deliberations, the defense attorney brought to the court's attention the fact his argument had been cut short. It was discovered the court had inadvertently cut eight minutes from defendant's argument. His motion for mistrial was refused.

The disparity was the result of innocent mistake and not deliberate design. Defense counsel did not bring it to the court's attention until after the prosecutor completed his rebuttal argument, which lasted ten minutes, and the jury had retired to consider the verdict. Only one issue, identification, was really controverted at trial. Defendant does not, either on the trial record or in his brief, inform us of what he was prevented from arguing. Given that a mistrial is a drastic remedy, to be sparingly employed, *State v. Smith*, 675 S.W.2d 690, 694[10] (Mo.App.1984), and given the trial court's superior opportunity to gauge the possible prejudice to defendant from any such action, *see State v. Chaney*, 663 S.W.2d 279, 287 (Mo.App.1983), we find no abuse of discretion in refusing to declare a mistrial in this case.

Judgment affirmed.

DOWD, P.J., and SNYDER, J., concur.