**STATE of Missouri, Respondent,**

v.

**Roger E. LAMPHIER, Appellant.**

**No. WD 38997.**

Missouri Court of Appeals,
Western District.

Dec. 15, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1988.

Application to Transfer Denied
March 15, 1988.

Robert G. Duncan, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P.J., and GAITAN and COVINGTON, JJ.

GAITAN, Judge.

Defendant-appellant, Roger E. Lamphier, was found guilty by jury trial of arson in the second degree (§ 569.050 RSMo 1986) and burglary in the second degree (§ 569.-170.1 RSMo 1986). He appeals that conviction alleging the trial court erred by permitting the state to call a witness that had not previously been endorsed. We affirm.

As the sufficiency of the evidence to support the verdict is not being challenged, a brief summary of the facts will suffice. The defendant was charged with the burglary and arson of a trailer home occupied by Sheila and James Whorton. At the time that these acts occurred, Sheila Whorton was in the trailer home with her three year old son. She testified she saw defendant break the glass in the porch door with his hand. She became frightened and hid. She then heard footsteps shuffle in the trailer and the sound of glass breaking. She next saw black smoke coming around the door of the bedroom where she and her son were hiding. Sheila and her son were able to escape from the burning trailer. Charges were subsequently filed against the defendant.

As its last witness, the State called, over defendant's objection, David Smith, a former employee of the defendant. Smith had not been endorsed as a witness on the amended information that was filed before the start of trial. Smith had been asked to come to testify by James Whorton. The State first learned of his existence the day before the trial began.

While defendant's objection went to the fact that this witness had not previously been endorsed, defense counsel admitted that he was made aware of this witness shortly after the State was notified, and that he had had an opportunity to talk briefly with both his client (defendant) and the witness. However, he voiced his objection for three basic reasons. First, the witness had not been endorsed. Second, the witness would testify that the defendant offered him money to testify on his behalf and this testimony would change the complexity of the case. Third, the witness' testimony would specifically implicate the

defendant inasmuch as the witness would testify that the defendant told him he was "going to burn" the trailer. Further, Smith would state that after the arson had been committed the defendant allegedly told him "he had burned it" (referring to the Whorton trailer).

Smith testified the second day of trial. On direct examination, Smith stated that defendant had told him he was planning to burn the trailer, and after the fire, told him how he had burned the trailer with gasoline. Smith also testified that the defendant later offered him money to be a witness for the defendant.

█ The defendant's assertion that the trial court abused its discretion by permitting David Smith, an unendorsed witness, to testify regarding statements that the defendant made prior to and after the arson of the trailer home because Smith's testimony allegedly subjected the defendant to "fundamental unfairness ... in denying him an opportunity to adequately prepare for trial", is without merit. The trial court, realizing that Smith's sudden appearance might prejudice the defendant's case, granted a lengthy recess to allow the defendant's attorney to (1) interview Smith, and (2) discuss his proposed testimony with the defendant. The court also offered to recess or continue the case as long as necessary to enable the defendant's attorney to research the witness' background and prepare for his testimony, but the defendant's attorney declined the offer. The defendant's attorney subsequently cross-examined Smith at length concerning his possible bias and prejudice and the reason for his 11th–hour appearance on the witness stand. Consequently, the defendant cannot now argue that the trial court should have granted a continuance against his attorney's wishes, or that the court should simply have excluded Smith's testimony altogether.

When Smith contacted the assistant prosecutor (Noland), Noland advised him to contact John Wright (investigator for Clay County Sheriff's Department). Smith called Wright and set up an appointment for Monday afternoon, the first day of the defendant's trial. However, Smith did not show up for that appointment, and did not, in fact, appear until the following day, when he arrived at the courthouse during the middle of trial and, after a hastily called recess, was interviewed by both Mr. Noland and the defendant's attorney for approximately 30 minutes. Prior to allowing Smith to testify, the trial judge made an extensive record concerning Smith's surprise appearance.

\* \* \* \* \* \*

The Court: Well, I'd ask you the same thing I asked you in chambers a few moments ago; something, well, how do you feel that you'd be prejudiced if any, or would you prefer more time.

And I told you I'd give you time—

Mr. Duncan: Right.

The Court: —To talk to your client about this.

Mr. Duncan: I'd really have to talk to him before I can—

The Court: Well, if you want to do that then you can talk to him before we make any further record.

Mr. Duncan: Right.

The Court: But, you've indicated that you don't think that you need to talk to this person any more.

Mr. Duncan: No, I think I have, know pretty well what he's gonna say.

The Court: *But, if there's any other way that you think that you might definitely be prejudiced by reason of having to proceed at this time, I even indicated that maybe we can continue this case over until, for some time until you could do* —[Emphasis added]

Mr. Duncan: Right.

The Court: —Whatever research you need to have done.

And you indicated to me that, you have another case here to try—

Mr. Duncan: Right.

The Court: —Starting tomorrow morning. But, maybe—we'd have to work that out, I don't know.

Mr. Duncan: That's right.

The Court: But, at any rate, we, why don't you talk to your client about it.

And I don't know just exactly on how long that's gonna take you, but you go ahead and talk to him and then we'll proceed, I suppose.

Because I, as I indicated in chambers after listening to everything, it just seems to me that if the State offers this person, I, I think it's, in fairness that I should let the person testify as long as I cannot see that either side is receiving an advantage by reason of his showing up late or that the defendant receives some prejudice by not knowing about it until this time.

Either of those things would influence me.

So, I—

Mr. Duncan: I will talk to the defendant and speak back later to the court.

The Court: Fine, fine.

\*      \*      \*      \*      \*      \*

RECESS

(Pursuant to the recess, with all parties present as hereinbefore, the following proceedings were had out of the presence and hearing of the jury panel):

The Court: Are you ready to proceed?

Mr. Duncan: Yes, your honor, I am.

The Court: Do you wish to make any further record?

Mr. Duncan: I don't believe so, your honor.

The Court: Very well. Form what the Court has heard thus far, the Court does not perceive any prejudice to the defendant that would incur to the defendant as a result of proceeding at this time to trial and by allowing the witness to testify.

Do you want, are you ready to proceed right now, Mr. Duncan?

Mr. Noland: Yes, sir.

Mr. Duncan: I am.

It is clear from the record that the State was not acting deceptively or in bad faith in calling this unendorsed witness because it had not been contacted by Smith until the day before the defendant's trial began. Both Mr. Duncan and Mr. Noland had the opportunity, prior to Smith's appearance on the witness stand, to discover the nature and content of Smith's anticipated testimo-ny. Before Smith was allowed to testify, the trial court engaged in a lengthy discussion with Mr. Duncan and the State concerning any possible prejudice that the defendant might suffer from the admission of Smith's testimony. The court twice inquired if Mr. Duncan needed more time to speak with Smith or analyze Smith's proposed testimony, and Mr. Duncan replied that he "kn[e]w pretty well what [Smith was] gonna say" and declined the court's offer of an indefinite recess.

Since Mr. Duncan was allowed to interview Smith and then to discuss his proposed testimony with the appellant, and since he subsequently rejected the trial court's offer of an indefinite recess, the appellant cannot now claim that he was surprised or prejudiced by Smith's testimony, or disadvantaged by the court's failure to grant the recess the appellant expressly refused. Nor can the appellant legitimately argue, as he now attempts to do, that he was denied "an opportunity to adequately prepare" for Smith's testimony.

■ The State was required, pursuant to Rule 25.03, to disclose to the appellant the names of its witnesses. Rule 25.03(A)(1). Moreover, the State's duty to disclose was a continuing one. Rule 25.08, V.A.M.R.; *Hayes v. State*, 711 S.W.2d 876, 878[2] (Mo. banc 1986). The purpose of the discovery rules is to enable a defendant to adequately prepare his defense to ensure him a fundamentally fair trial. *State v. Biggs*, 713 S.W.2d 618, 621 (Mo.App.1986). Determination of whether the State violated the rules of discovery rests within the sound discretion of the trial court. *Id.* at 621[5].

Furthermore, Rule 25.16, V.A.M.R., expressly provides that one of the remedies a trial court may utilize in the event it discerns the existence of a possible discovery violation is to "grant a continuance," an offer the trial court made, but which was refused by the appellant's attorney. Consequently, it is clear that (1) there was no discovery violation in this case, but (2) even if there was, this is not a case where the trial court ignored the violation and refused to take remedial action. Rather, the remedial action suggested by the trial court (recess or continuance) was declined by defendant's counsel.

■ The trial court's decision to allow Smith, an unendorsed witness, to testify does not automatically entitle the appellant to a new trial, even though the failure to endorse Smith was a technical violation of subsection (f) of Rule 23.01. Under this rule, the trial court possesses broad discretion in permitting the late endorsement of witnesses, *State v. Allen*, 710 S.W.2d 912, 915[1] (Mo.App.1986); *State v. Bryant*, 705 S.W.2d 559, 561[3] (Mo.App.1986), or in permitting the testimony of unendorsed witnesses. *State v. Bolden*, 494 SW.2d 61, 67[13] (Mo.1973); *State v. Goodpaster*, 438 S.W.2d 256, 257[1] (Mo.1969); *State v. Keeble*, 399 S.W.2d 118, 121[11] (Mo.1966). Absent an abuse of discretion by the trial court or prejudice to the defendant, a conviction should not be overturned because a witness was endorsed on the day of trial, *State v. Allen, supra*, 710 S.W.2d at 915[2]; *State v. Clark*, 693 S.W.2d 137, 140[4] (Mo.App.1985).

Several factors are considered when evaluating whether the trial court abused its discretion in allowing the late endorsement of a witness. *State v. Renner*, 675 S.W.2d 463, 465[3] (Mo.App.1984). These factors include whether the defendant waived his objection, whether the State intended to surprise the defendant, acted deceptively or in bad faith with the intent to disadvantage the defendant, if the defendant was actually surprised and suffered any disadvantage, and whether the type of testimony given might have been readily contemplated. *Id. See also State v. Stokes*, 638 S.W.2d 715, 719–720[2] (Mo. banc 1982); *State v. Allen, supra*, 710 S.W.2d at 915[4].

A review of the factors enumerated in *Renner* conclusively demonstrates that the trial court did not abuse its discretion in allowing Smith to testify.

The judgment is affirmed.

All concur.