**STATE of Missouri, Respondent,**

v.

**Frankie S. GILMORE, Appellant.**

No. WD 42242.

Missouri Court of Appeals,
Western District.

Sept. 11, 1990.

Application to Transfer Denied
Nov. 20, 1990.

David S. Durbin, Appellate Defender, Terri L. Backhus, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and SHANGLER and GAITAN, JJ.

GAITAN, Judge.

The defendant-appellant, Frankie S. Gilmore, appeals the jury conviction of robbery in the first degree under § 569.020 RSMo 1986. He was sentenced as a class X offender to twenty years in prison. He appeals alleging five points of trial court error. We affirm.

The appellant, Frankie S. Gilmore, was found guilty of first degree robbery by a jury in the Circuit Court of Jackson County in connection with the robbery of a convenience store on the afternoon of November 18, 1988.

At trial, the state called Florence Stringer, the appellant's aunt, in its case-in-chief. On cross-examination, Ms. Stringer was questioned by appellant's attorney about alleged coercive action directed towards her by the state. The substance of her testimony was that she was present to testify for the state not because of a subpoena, but because of threats by the state that she would be arrested and forceably brought in if she failed to appear. In an effort to rebut and clarify the testimony of Ms. Stringer, the state called Debbie McKinzey, the state investigator who had contacted Ms. Stringer. The defense objected to McKinzey's testimony claiming that she had been present during Ms. Stringer's testimony despite invocation of "the rule" and that her testimony would be purely collateral and irrelevant. The state also acknowledged prior to direct examination of McKinzey that she had not been endorsed as a witness prior to trial. Over appellant's objection, McKinzey was allowed to testify.

In its case-in-chief, the state called Detective Terry Barnes, one of the investigating officers, to testify. Over objection, Barnes testified that he had spoken with the appellant in the past and that during their conversation he had not noticed the defendant's gold tooth.

After both sides had rested, the defendant offered as part of the jury instructions, instructions "A" and "B" which were special cautionary instructions regarding the credibility of the eyewitnesses to the robbery. The trial court refused to submit these instructions to the jury. After the instructions had been submitted to the jury and a guilty verdict for robbery in the first degree had been returned, it was discovered that the verdict director for the robbery in the first degree charge contained an incomplete definition of "dangerous instrument." Appellant asked for, and was denied, a new trial on this ground.

Based on evidence of three prior felony convictions, the court classified the appellant as a "class X offender" under § 558.019 RSMo (Supp.1988) for purposes of sentencing.

The appellant makes five allegations of error.

### I.

■ As both appellant and respondent acknowledge, Rule 28.02(f) makes it erroneous to give or fail to give "an instruction ... in violation of this rule or any applicable Notes on Use...." Rule 28.02(f). Error standing alone, however, is not sufficient to overturn the jury's determination of guilt. There must be a showing of prejudice to the appellant as a result of the error before there are grounds to upset the verdict. *See State v. Smashey*, 672 S.W.2d 154, 158 (Mo.App.1984); *State v. Mee*, 643 S.W.2d 601, 604 (Mo.App.1982); *State v. Ward*, 588 S.W.2d 728, 731 (Mo.App.1979).

■ Rule 28.02(f) requires that the existence of prejudice be "judicially determined." *See also State v. Billingsley*, 534 S.W.2d 484, 485 (Mo.App.1975). This judicial determination is qualified by a strong, though rebuttable, presumption that prejudice exists where there is anything less than "religious observation both as to the forms ... and instructions contained in [the] Notes on Use" of the Missouri Approved Instructions. *Id., see also State v. Petary*, 781 S.W.2d 534, 542 (Mo. banc 1989); *State v. White*, 622 S.W.2d 939, 943 (Mo. banc 1981). Starting with a presumption of prejudice, the reviewing court will consider the facts and the instructions together in deciding if it is "clearly shown" that no prejudice exists. *Petary*, 781 S.W.2d at 542; *White*, 622 S.W.2d at 943.

■ In the present action, the jury was instructed on both first degree robbery and second degree robbery. The verdict director for robbery in the first degree, however, failed to fully define the term "dangerous instrument." [1] Specifically, the instruction omitted the phrase stating that whether or not an instrument is "dangerous" is determined "under the circumstances in which it is used." [2] The victims testified that the robber threatened that if they did not turn over the money, he had "a piece" and would seriously hurt them.

Appellant argues that this omission was prejudicial in that, if fully instructed, the jury could have found that, under the circumstances in which it would be used, "a piece" was not readily capable of causing death or serious physical injury and thus there would be no finding of robbery in the first degree. In essence, the appellant seems to be arguing that prejudice exists because without the full definition of dangerous instrument the jury could not "consider wholly whether or not the defendant

---

**1.** The full definition of "dangerous instrument" as stated in Missouri Approved Instructions–Criminal 323.02 is derived from § 556.061(9) RSMo. (1986) and reads:
   any instrument, article or substance which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

**2.** The defective verdict director defined "dangerous instrument" as:
   any instrument, article or substance which, capable of causing death or other serious physical injury,"
thus omitting the line "under the circumstances in which it is used, is readily...."

was guilty of robbery in the first degree." Further, appellant argues that had the jury been properly instructed, they would have found him guilty not of robbery in the first degree but of the lesser included offense of robbery in the second degree.

Both victims testified independently that they believed that when the robber stated that he had "a piece" he was referring to a gun, and such a belief was not unreasonable. *See State v. Humphrey*, 789 S.W.2d 186, 189 (Mo.App.1990). Further, the issue is not whether the robber had a gun or displayed a gun but rather what the victims believed. *State v. Blevins*, 581 S.W.2d 449, 453 (Mo.App.1979) (held that it was not error to instruct the jury as to robbery by means of a dangerous and deadly weapon where the victim saw neither a knife or gun during the robbery but believed the assailant was carrying a knife). There was no evidence before the jury that could be reasonably construed as implying that "a piece" meant anything other than a gun. Given that a loaded firearm is "readily capable of causing death or serious physical injury" under virtually all circumstances, the insertion of the omitted phrase would have been nothing more than a meaningless redundancy.

In addition, the jury was properly instructed on robbery in the second degree. Had they determined that the robbery was accomplished by threatened use of an instrument, not "dangerous," the option of convicting the appellant on the lesser offense was clearly before them. Adding the omitted phrase to the verdict director for the charge of first degree robbery would not have altered or foreclosed this option.

In examining the instructions submitted to the jury it is clear that the trial court was in error in not submitting the full definition of "dangerous instrument" to the jury. It is equally clear, however, that the appellant was not prejudiced by this error. Whether the missing phrase had been inserted in the definition of "dangerous instrument" or not, the outcome would not have been altered. If the jury believed that use of a "dangerous instrument" was threatened, the only available evidence as

to the nature of the instrument was that it was believed to be a gun. That being so, inclusion of the phrase is pointless. If the jury had not believed use of a "dangerous instrument" was threatened, the proper instruction for the lesser offense was available. Prejudice has been defined as creating a likelihood that the instructions will confuse or mislead the jury. *State v. Billingsley*, 534 S.W.2d 484, 486 (Mo.App. 1975); *State v. Ward*, 588 S.W.2d 728, 731 (Mo.App.1979). Given the facts before the jury, the submitted instructions, though erroneous, did not create a likelihood of confusing or misleading the jury and thus were nonprejudicial. Therefore, the jury verdict should not be disturbed.

## II.

Appellant's second contention is that the trial court erred in allowing the prosecution to call Debbie McKinzey, a state investigator, to testify. Specifically, appellant claims Ms. McKinzey's testimony was improper because: (1) although "the rule" had been invoked, Ms. McKinzey was present for the testimony of Florence Stringer, (2) Ms. McKinzey was not endorsed as a witness by the state prior to trial, and (3) the testimony of Ms. McKinzey should have been excluded as a purely collateral matter. Testimony by Stringer elicited on cross-examination by appellant's counsel contained allegations of prosecutorial misconduct which were not anticipated by the state. The prosecution called Ms. McKinzey exclusively to clarify and rebut the allegation made by Stringer that her presence as a witness for the state was a product of coercion by the state investigator, Ms. McKinzey.

■ Appellant first argues that it was error to allow McKinzey to testify in that despite "the rule" being in effect, McKinzey was present in the courtroom during all of Stringer's testimony. Appellant claims prejudice in that Ms. McKinzey "could tailor her responses to directly contradict anything that Ms. Stringer had testified to." Violation of "the rule" does not, however, automatically bar admission of testimony by the offending witness. Rather, exclu-

sion of the testimony lies within the sound discretion of the trial court, *State v. Lord,* 286 S.W.2d 737, 741 (Mo.1956), which will generally be exercised only where the violation of "the rule" occurs under special circumstances. *See United States v. Kiliyan,* 456 F.2d 555, 560–61 (8th Cir.1972) (citing *Holder v. United States,* 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893)). In Missouri courts, these special circumstances have generally been interpreted in cases where the "witness violates the rule [with] the consent, connivance or procurement of the party or counsel calling him." *State v. Gibson,* 760 S.W.2d 524, 526–27 (Mo.App.1988) (citing *Cozad v. Crane School Dist. R–3,* 716 S.W.2d 408, 412–13 (Mo.App.1986); *see also State v. Shay,* 339 S.W.2d 799 (Mo.1960). Further, where the testimony of the offending witness is offered for the limited purpose of impeachment and not as a part of the offering party's case-in-chief, courts are much more receptive to the evidence. *See U.S. v. Shurn,* 849 F.2d 1090, 1093–94 (8th Cir. 1988) (held that rebuttal testimony of a police officer offered to impeach a state witness was submissible despite a violation of "the rule" in that prior to the witness's inconsistent testimony the government did not intend to call the officer and further that the evidence was "not cumulative, but simply impeaching"); *see also State v. McMillian,* 779 S.W.2d 670, 671 (Mo.App. 1989).

■ In the present case, there is no evidence that McKinzey's presence in the courtroom during Stringer's testimony was the product of consent, connivance, or procurement by the state. Indeed, the evidence indicates that the state had no intention of calling McKinzey until the moment that Stringer made allegations of prosecutorial misconduct. In addition, the purpose of McKinzey's testimony was not to be cumulative to the state's case-in-chief, but merely to impeach Stringer. Therefore, it was within the trial court's discretion to allow McKinzey to testify despite the fact

that she was present during Stringer's testimony.

■ Appellant argues next that the trial court erred in allowing McKinzey to testify in that she had not been endorsed as a witness by the state prior to trial as required by Supreme Court Rule 25.03(A).[3] Although the trial record does not indicate that appellant's counsel made a timely objection to McKinzey's testimony on these grounds and thus did not preserve the matter for appeal, *State v. Dayringer,* 755 S.W.2d 698, 702 (Mo.App.1988), Rule 25.-03(A) would not have prevented the trial court from allowing McKinzey to testify. Rule 25.03(A)(1) requires only that the state disclose intended witnesses after written request by defendant's counsel. In the present case, McKinzey was not intended to be a witness by the state during the pretrial discovery stage, and there is no evidence that the appellant made the required written request. Thus, Rule 25.03 is inapplicable.

■ Rule 23.01(f) allows that "[a]dditional witnesses may be listed at any time after notice to the defendant upon order of the court." Rule 23.01(f). The trial court is allowed wide discretion in allowing witnesses to testify where endorsement has been late or even where, as in the present case, the witness is unendorsed. *State v. Lamphier,* 745 S.W.2d 166, 170 (Mo.App. 1987) (citing *State v. Bolden,* 494 S.W.2d 61, 67 (Mo.1973); *State v. Goodpaster,* 438 S.W.2d 256, 257 (Mo.1969); *State v. Keeble,* 399 S.W.2d 118, 121 (Mo.1966)). Missouri appellate courts have generally applied the factors enunciated in *State v. Renner,* 675 S.W.2d 463, 465 (Mo.App.1984), in determining whether the trial court abused its discretion in permitting an unendorsed witness to testify. *See Lamphier,* 745 S.W.2d at 170; *State v. Pickens,* 763 S.W.2d 672, 673 (Mo.App.1988). In determining whether the trial court erred in allowing a witness to testify who was endorsed late, the reviewing court will inquire: (1) whether the defendant waived the objection, (2)

---

**3.** Missouri Supreme Court Rule 25.03(A)(1) requires the state to disclose "[t]he names and last known addresses of persons whom the state

intends to call as witnesses ... at trial." Rule 25.03(A)(1).

whether the state intended surprise or in bad faith intended to deceive or disadvantage the defendant, (3) whether the defendant was in fact so deceived or disadvantaged, and (4) whether "the type of testimony given might readily have been contemplated." *Renner*, 675 S.W.2d at 465. This exact analysis has been adopted when the witness at issue was unendorsed. *See Lamphier*, 745 S.W.2d at 170.

In the present case, all of the *Renner* factors point to the conclusion that the trial court correctly admitted the testimony of McKinzey; the appellant did not object to McKinzey as an unendorsed witness at trial, there is no evidence that the state intended to surprise or deceive or acted in bad faith and no evidence that appellant was in fact surprised, deceived, or disadvantaged, and finally McKinzey's testimony should have been contemplated by the appellant given that the claim of state coercion was put into issue by appellant. For these reasons, the trial court did not abuse its discretion in allowing McKinzey to testify despite the fact that she had not been endorsed.

■ Appellant's final allegation of error relating to the admission of McKinzey's testimony is that her testimony was a purely collateral matter and not relevant. To be successful in this claim, the appellant must show both that admitting the testimony was erroneous and that this error was prejudicial. *State v. McMillin*, 783 S.W.2d 82, 98 (Mo. banc 1990). Appellant fails to show either.

■ Appellant claims that McKinzey's testimony as to the circumstances surrounding the alleged state coercion of Stringer was irrelevant and thus the trial court erred in admitting it. This claim is tenuous, however, given that the defendant put the allegation of prosecutorial misconduct in issue. The Missouri Supreme Court has repeatedly held that "a defendant is not in a position to complain of the state inquiring about matters brought into the case by his own question." *State v. Lue*,

598 S.W.2d 133, 138 (Mo. banc 1980); *see also State v. Jordan*, 646 S.W.2d 747, 750–51 (Mo. banc 1983). Further, once the issue has been injected by the defendant, otherwise inadmissible evidence may be allowed to "explain or counteract a negative inference raised by the issue the defendant interjects." *State v. Lingar*, 726 S.W.2d 728, 734–35 (Mo. banc 1987).

Appellant's claim that the admission of testimony by Ms. McKinzey was erroneous and prejudicial has failed on all three contentions and therefore should be rejected.

### III.

■ Appellant's third allegation of error is based on the testimony of Terry Barnes, an investigating officer from the Grandview Police Department.[4] The essence of the alleged error is two-fold: (1) admission of testimony by Detective Barnes violated an "in-depth pre-trial discussion" in which the court foreclosed references to any conversations that Detective Barnes had with the appellant and (2) that regardless of this "pre-trial discussion," the duty to disclose the statements made by appellant to Barnes imposed by Rule 25.03 was ignored by the state.

Both the prosecutor and the court characterized the "in-depth pre-trial discussion" between the court, prosecutors and the defense as prohibiting references to the substance or contents of statements made by the appellant to Detective Barnes, not as precluding mention of these conversations for every purpose. Here, as appellant concedes, the purpose of the elicited testimony was unrelated to the content of the conversation, but was instead "to establish that Barnes did not notice that the appellant had a gold tooth." Thus, the record is clear that the testimony was offered for a purpose that is not in conflict with the Court's understanding of the agreement. Further, even if the agreement was as appellant interprets it (as precluding all references to conversations between appellant

---

**4.** The testimony to which appellant objects was, in full, as follows:

Q. Detective, have you had an opportunity to speak with the defendant?

A. Yes, sir.

Q. During that time did you notice his gold tooth?

A. No, sir.

and Barnes), this "pre-trial discussion" would not have absolutely barred admission of the testimony of Detective Barnes. At best, the pretrial discussion was interlocutory and subject to modification at trial. *State v. Jones,* 646 S.W.2d 120, 122 (Mo.App.1983) (citing *State v. Howell,* 524 S.W.2d 11, 19 (Mo. banc 1975)); *see also State v. Evans,* 639 S.W.2d 820, 822 (Mo. 1982) (held that pretrial motion in limine does not automatically result in permanent exclusion of the references sought to be prohibited and may be altered at trial).

■ Appellant further argues that the state violated Rule 25.03(A)(2) in failing to disclose the substance of statements made by appellant to Detective Barnes. Appellant has failed to assert that he complied with the requirement in Rule 25.03(A) of filing a written request for the information and therefore cannot argue on appeal that the information was withheld. *State v. Dusso,* 760 S.W.2d 546, 549 (Mo.App.1988).

■ Finally, appellant speculates that the testimony of Detective Barnes led the jury "to believe that there were statements outside the scope of the evidence at trial that they were not allowed to see." Extending this speculation even further, appellant claims that the prosecutor was implying to the jury that he possessed knowledge not known to the jury that would support a verdict of guilty. *Id.* Given the meager testimony before the jury as to statements made by appellant to Detective Barnes and the lack of any reference to the substance of their conversation, *see supra* note 4, appellant's speculations are highly attenuated and insubstantial. The only authority cited in support of appellant's contention is *State v. Bramlett,* 647 S.W.2d 820 (Mo.App.1983). *Bramlett,* however, is significantly dissimilar factually from the present action and does not support appellant's claim. In *Bramlett,* the prosecutor, in closing arguments, told the jury to convict the defendant "upon reliance that the prosecution and its witnesses are servants of the public interest and would themselves candidly disclose any basis for acquitting the accused," instead of an independent evaluation of the evidence. *Id.* at 822.

The action of the state in *Bramlett* was radically different than the state's action in this case and thus *Bramlett* is inapplicable to the issue appellant raises.

There was no error in allowing Detective Barnes to testify as to first-hand observations of the appellant's teeth during a conversation between them. Thus, appellant's argument concerning the testimony of Detective Barnes is rejected.

## IV.

■ In appellant's fourth allegation of error he states that the trial court erred in failing to give "cautionary instructions" concerning eye-witness identification of the appellant to the jury. Specifically, appellant contends that because "eyewitness testimony is the sole basis for conviction," due process required that the jury be given "cautionary instructions" detailing factors for the jury to consider in evaluating the credibility of the eyewitnesses. *Id.* These cautionary instructions offered by appellant were derived from *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir.1972), and would have been in addition to those required by the Missouri Approved Instructions.

Missouri courts have unequivocally rejected the argument that it is error for a trial court to refuse to submit additional cautionary instructions to the jury concerning eyewitnesses modeled after those contained in *Telfaire,* especially where the Missouri Approved Instructions adequately present defendant's theory of innocence. *See State v. Higgins,* 592 S.W.2d 151, 161 n. 14 (Mo. banc 1979); *State v. Glass,* 703 S.W.2d 81, 83 (Mo.App.1985); *State v. Price,* 689 S.W.2d 380, 382–83 (Mo.App. 1985); *State v. Moton,* 671 S.W.2d 347 (Mo. App.1984); *State v. Rider,* 664 S.W.2d 617, 620 (Mo.App.1984); *State v. Allen,* 663 S.W.2d 336 (Mo.App.1983). MAI–CR3d 3.02.01 was submitted to the jury and directs their attention to issues of witness credibility. "Numerous cases have announced the settled proposition that a trial court does not err in declining to give an additional instruction on witness credibility beyond the general credibility instruction

of MAI–CR3d 3.02.01." *State v. Wright,* 751 S.W.2d 48, 53 (Mo. banc 1988); *see also State v. Borden,* 605 S.W.2d 88, 93 (Mo. banc 1980); *State v. Long,* 768 S.W.2d 664, 666 (Mo.App.1989) (held that special cautionary instruction as to eyewitness identification was unnecessary in Missouri courts "because the subject is adequately covered by other MAI–CR instructions" citing *State v. Quinn,* 594 S.W.2d 599, 605 (Mo. 1980); *State v. Murphy,* 415 S.W.2d 758 (Mo. banc 1967); *State v. Price,* 689 S.W.2d 380, 382 (Mo.App.1985); *Moton,* 671 S.W.2d at 347; *State v. McCain,* 662 S.W.2d 864, 866 (Mo.App.1983); *State v. Cotton,* 660 S.W.2d 365, 367 (Mo.App.1983); *State v. Hutton,* 645 S.W.2d 22, 24 (Mo.App.1982); *State v. Manning,* 634 S.W.2d 504, 506 (Mo.App.1982); *State v. Swink,* 620 S.W.2d 63, 64 (Mo.App.1981); *State v. Jones,* 607 S.W.2d 740, 742 (Mo.App.1980). Finally, submission of a cautionary instruction such as that in *Telfaire* would violate Rule 28.-02(d) which requires that jury instructions be simple, brief, impartial, and free from argument. *Glass,* 703 S.W.2d at 83; *State v. Smith,* 632 S.W.2d 36, 40 (Mo.App.1982) (citing *State v. Smith,* 607 S.W.2d 737, 739 (Mo.App.1980)).

## V.

■ Appellant's final allegation of error is based upon § 558.019, RSMo (Supp. 1988), entitled "Minimum prison terms for certain repeat offenders" which precludes the availability of parole to convicted defendants classified as "prior," "persistent," or "class-X" offenders until a prescribed percentage of their sentence has been served. *See* § 558.019.2, RSMo (Supp.1988). The appellant was committed to the Missouri Department of Corrections as a "class-x offender" by the trial court, upon evidence presented by the state of three prior felonies, one of which did not result in imprisonment of greater than 120 days.

In relevant part, section 558.019 states: [A]ny defendant who has pleaded guilty to or has been found guilty of a felony and served time of imprisonment of not less than one hundred twenty days in the department of corrections or in a penal institution in another state which is equivalent to the department of corrections or a federal prison, the calculation of which shall include any jail time credit and has been committed to the department of corrections as a ... class X offender shall be required to serve the following minimum prison term:
(3) If the defendant is a class X offender, the minimum prison term which the defendant must serve shall be eighty percent of his sentence.
4. For the purpose of determining the minimum prison terms to be served, the following calculators and definitions shall apply:
(3) A **"class X offender"** is one who has previously pleaded guilty to or has been found guilty of three felonies committed at different times....

§ 558.019, RSMo (Supp.1988). Appellant's argument is that to be classified as a class-X offender the statute requires a finding of three prior felonies each resulting in imprisonment of not less than 120 days. While the state produced evidence of three previous felony convictions, one did not result in imprisonment of not less than 120 days. Thus, if the appellant's interpretation is accepted, he could have been classified as a "persistent offender" at most, but not a class X offender. The state disagrees with this interpretation and argues that the plain language of the statute requires only that one of the three previous felonies need have resulted in imprisonment greater than 120 days for a "class X offender" designation. We agree with the state.

The concise question presented by this part of appellant's appeal is: What evidence must be produced by the state to support classification of a criminal defendant as a "class X offender" under § 558.019, RSMo (Supp.1988)? This issue of statutory interpretation is a question of first impression for Missouri appellate courts. Section 558.019 does not state that for a convicted person to be classified as a class X offender he must have been incarcerated at least 120 days for each of three prior felony convictions. The statute sections read together state that a person who

previously pleaded guilty or who was found guilty of "three felonies committed at different times" and who "served time of imprisonment of not less than one hundred twenty days" in a qualifying penal institution qualifies as a class X offender. The legislature is presumed to have intended what the statute says by clear and unambiguous language. *State v. Nevels*, 712 S.W.2d 688, 689–90 (Mo.App.1986).

"The canon of strict construction of criminal statutes is well recognized. However, that canon is not to be applied inflexibly, to override all other considerations." *State v. Daugherty*, 744 S.W.2d 849, 853 (Mo.App. 1988) (en banc). Since there is no legal support for appellant's position and the plain meaning of the statute indicates that it is only necessary for appellant to have served a total of 120 days, appellant's contention is denied.

The judgment of the trial court is affirmed.

All concur.