STATE of Missouri, Respondent,

v.

Mark WILLIAMSON, Appellant.

Mark WILLIAMSON,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 55110, 57025.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 26, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 8, 1991.

Application to Transfer Denied
June 11, 1991.

Michael A. Gross, St. Louis, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

A jury found defendant, Mark A. Williamson, guilty of Count I, murder in the first degree; Count II, armed criminal action, Count III, assault in the first degree; and Count IV, armed criminal action. Defendant appeals conviction on Counts I and II only. These counts charged defendant shot and killed Terry Bailey. Defendant does not appeal conviction on Counts III and IV, which charged defendant shot Michael Mayes who recovered and testified. The trial court sentenced defendant to a term of life imprisonment without parole on the murder charge and a consecutive term of thirty years imprisonment on the related armed criminal action charge. The court sentenced defendant to a term of life imprisonment on the assault charge and a consecutive term of thirty years imprisonment on the second armed criminal action charge. The consecutive sentences on Counts I and II were made concurrent with the sentences imposed in Counts III and IV.

On direct appeal defendant claims the trial court erred in failing to sustain his motion for a directed verdict of acquittal for Counts I and II because the evidence was insufficient to support the convictions. Defendant also appeals from a denial of his Rule 29.15 motion for post conviction relief after an evidentiary hearing. We affirm.

When reviewing defendant's challenge to the sufficiency of the evidence to sustain his convictions, we view the evidence and all reasonable inferences therefrom in the light most favorable to the state and disregard all contrary evidence. *State v. Livingston,* 801 S.W.2d 344 (Mo. banc 1990). When determining whether there was substantial evidence to support the jury's verdict, we do not weigh the evidence and substitute our judgment in place of the jury's. *Id.* We apply these standards and find the following evidence.

Defendant, Marlow Downer, Michael Mayes and Terry Bailey were drug dealers and long time friends. Bailey lived in Atlanta, Georgia. He made approximately twenty trips to St. Louis in the six months preceding his death which occurred on December 14, 1986. Generally, defendant would meet Bailey at the airport. However, when Bailey came to St. Louis on December 13, 1986, for the final time, he arranged for Mayes to meet him. Bailey also instructed Mayes, his mother and his wife not to inform defendant he was in St. Louis.

The evening of December 14, 1986, Mayes drove Bailey to Westover Court Apartments in University City where they arranged a rendezvous with defendant and Downer. Mayes and Bailey arrived at the apartment complex and got out of the car to speak with defendant and Downer. No one was on the parking lot except the four men. They learned nobody was home to let them into the designated apartment. Mayes and Bailey returned to their car. After the men were back in the car, defendant walked over to Mayes who was on the driver's side. Defendant and Mayes engaged in a brief conversation. Without being solicited, Mayes gave defendant $1,500 in partial payment on a $3,000 debt. Defendant accepted the money, took five steps away from the car, turned around and for no apparent reason opened fire on Mayes. Mayes suffered three hits from a .38 caliber gun. As the firing began, Bailey scrambled out of the passenger's seat of the car and headed in a southeast direction towards Olive Street. Mayes testified he saw defendant run in the same direction as Bailey. Mayes lost consciousness. Upon regaining consciousness, Mayes did not see anyone on the parking lot.

At approximately 6:30 p.m., sounds of gunfire attracted the attention of homeowner Ms. Luem. She went to her front door. Ms. Luem observed through her front door window people running around cars and across the lot in the direction of Olive Street. Simultaneously, she observed a speeding car coming around the apartment building and turning south towards Olive Street. Ms. Luem dialed 911.

The sound of backfire from a car caused Mr. Fields to look out his kitchen window also at approximately 6:30 p.m. Mr. Fields was preparing a meal and had a clear view of the apartment complex from his kitchen. Mr. Fields spotted defendant shooting and chasing Bailey on an open lot, and an orange AMC Pacer coming "out of the side of the apartment." As defendant and Bailey ran in front of Ms. Graves' house, they both fell. While the two men were on the ground, the car stopped. The driver, a black man, got out, fired one shot towards Bailey then drove off.

Bailey and defendant got up from the ground and the pursuit continued. Once Bailey crossed Olive Street, defendant ceased the pursuit. The driver turned right from Olive Street into the Target parking lot, and made a U-turn. Mr. Fields observed the driver aim and fire at Bailey. Bailey fell to the ground. The driver left, heading west on Olive Street.

Ms. Thomas and her husband, intent on purchasing a Christmas tree, left their house at approximately 6:20 p.m. to drive five blocks to Target. During the drive, Ms. Thomas saw Bailey running from the north towards Olive Street. Later at the Target parking lot, gunfire attracted Ms. Thomas' attention. She saw a man standing outside an orange Pacer on the passenger side fire a gun a minimum of five times at Bailey.

Upon arriving at the scene, police officer Deken was able to follow a path from Bailey's body to the apartment parking lot based upon information received from witnesses and various spots of blood. A beeper, which was identified as being in the possession of Bailey, was found along the path. In addition, keys belonging to defendant and one half of a twenty dollar bill were found near the Graves' residence approximately at the location where Mr. Fields testified Bailey and defendant fell.

Ms. Graves testified she heard two incidents of gunfire at approximately 6:30 p.m. The first sounded like it was close to her house, while the second became more distant. Once she heard sirens, Ms. Graves came out of her home and saw drops of blood on the walk in front of her door. She saw keys to defendant's car and home and one half of a twenty dollar bill laying on the ground close to the walkway. The keys were not there at 5:30 p.m. when Ms. Graves unchained her dog.

Examination of Bailey's body revealed Bailey was shot a total of five times. According to the medical examiner, a single gunshot wound to the chest caused Bailey's death. A ballistics expert testified two types of nine millimeter bullets were found

in Bailey. The ballistics expert was unable to conclude whether the nine millimeter bullets were all fired from the same gun.

In his first allegation of error, defendant contends the trial court erred in failing to sustain his motion for a directed verdict of acquittal on the murder and related armed criminal action charge because the evidence was insufficient to support the convictions. Defendant argues the state adduced no evidence which established or supported a *valid* inference that defendant pursued, shot or assisted in the shooting of Bailey. Defendant incorrectly argues the only evidence which suggests defendant's involvement in Bailey's death, is the testimony of Mayes that defendant pursued Bailey. Defendant questions the reliability of Mayes' testimony given the fact Mayes related a conflicting statement in a prior hearing and repeatedly lied to police officers during their investigation. Finally, defendant argues the state did not establish a connection between himself and the automobile which pursued Bailey.

Because there was no direct evidence defendant shot Bailey the verdicts on Counts I and II rest in part on circumstantial evidence. Sufficiency requires the facts so proven to be consistent with each other and the state's hypothesis of guilt. *State v. Rodden*, 728 S.W.2d 212, 213 (Mo. banc 1987). The evidence must be inconsistent with innocence and preclude a reasonable hypothesis of innocence. *Id.* Preliminarily, we note the conflicting and inconsistent statements made by Mayes reflect upon his veracity as a witness. The weight and credibility to be given to Mayes' testimony was a proper issue for the jury to determine. *State v. Griffin*, 640 S.W.2d 128, 131 (Mo.1982). Apparently, as evidenced by the verdict, the jury believed Mayes.

The evidence to prove defendant's guilt includes, but is not limited to, the following direct and circumstantial evidence. The direct testimony of Mayes that he saw defendant take off in pursuit of Bailey, who was heading in a southeast direction towards Olive Street. The testimony of Mr. Fields and Ms. Luem that sounds of gunfire attracted their attention to a black man running from the apartment complex towards Olive Street with another black man firing a gun while in pursuit, and to a speeding, orange AMC Pacer simultaneously joining in the pursuit. The key physical evidence of defendant's pursuit is Ms. Graves' discovery of defendant's keys on her lawn in a divot, which is the same location Mr. Fields testified the men fell. The circumstantial evidence of defendant's presence on the lawn at the time of the shooting is strengthened by Ms. Graves' testimony the keys were not on her lawn an hour earlier.

The driver of the automobile shot only at Bailey, not at defendant while the men were on the ground. Thereafter, defendant continued his pursuit. This is circumstantial evidence which supports an inference that defendant was not afraid of being harmed by the driver because he knew the driver's intent. Finally, there is testimony to support a finding that either the driver or a passenger of the Pacer fired five or more shots at Bailey in the Target parking lot where Bailey died.

In summary, Mayes' testimony and defendant's keys substantiate defendant as the pursuer. The simultaneous timing and targeting of Mayes by the driver connect defendant with the Pacer. The physical and testimonial evidence in the case is inconsistent with defendant's theory of innocence and consistent with the state's theory defendant killed, or acted with another in the death of Bailey. Further, defendant told police officers at the police station, in the presence of his attorney and after signing a Miranda card, at the relevant time in question he and a friend went to a girlfriend's mother's house and then to a friend's house. When proven false, exculpatory statements evidence a consciousness of guilt. *Rodden*, 728 S.W.2d at 219. Therefore, the court properly overruled defendant's motion for acquittal.

Defendant also makes a claim of ineffective assistance of counsel under Rule 29.15. He contends the findings relied upon by the motion court are erroneous because he was deprived of effective assistance of counsel "by his trial counsel's late decision that he should not testify in

his own defense and by counsel's various decisions relating to the abandonment of the defense of self defense [sic]." The motion court found:

41. Movant had numerous opportunities and ample time to discuss with his trial counsel and to reflect on his decision not to testify.

42. The advice of Movant's trial counsel not to testify was competent, appropriate trial strategy.

Our review is limited to whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j).

Defendant knew he could take the stand notwithstanding the advice of counsel. Counsel informed defendant he would support defendant 100% if he decided to take the stand. The trial and hearing transcripts reveal counsel felt defendant "ought not to testify because it will open up too many avenues on impeachment that ... would unduly prejudice the jury against the defendant." Specifically, counsel felt it would be difficult for defendant to overcome the false alibi statement he gave the police and to explain why he brought a gun to the rendezvous with Mayes and Bailey. Counsel believed the state's evidence was insufficient to submit the charges to the jury and the creditability of the state's primary witness, Michael Mayes, was destroyed beyond rehabilitation.[1] Moreover, defendant and all the other men were deeply involved in the business of drug dealing and Bailey owed defendant a large sum of money related to that activity.

Defendant wanted to tell the jury he gave the police a false alibi, "[b]ecause of the fact that I had shot someone [Mayes] and I guess out of fear I just told them [police] that I didn't do it." Defendant would have testified he fired twice at Mayes with a *.357 Magnum* in self-defense, turned around, ran away and did not fire any shots at Bailey. It should be noted this was movant's testimony at the motion hearing. But defendant shot Mayes with a .38 caliber weapon.

■ Defendant has proved nothing more than his trial counsel advised him not to take the stand and present a defense of self-defense which defendant could not support by corroborating evidence and which was in conflict with defendant's previous alibi defense. Trial counsel gave defendant advice on a question of trial strategy which defendant accepted. The choice was left to defendant and counsel offered to support his choice. Moreover, the law is clear that a professional decision on a question of trial strategy may not serve as the basis for a successful charge of ineffective assistance of counsel. *Fletcher v. State*, 710 S.W.2d 928, 929 (Mo.App.1986) (citing *Hughes v. State*, 507 S.W.2d 363, 365 (Mo. 1974)). Defendant has failed to prove his counsel's performance was deficient and he was prejudiced thereby. *See Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

We affirm.

PUDLOWSKI, P.J., and GRIMM, J., concur.

---

1. Defendant's first claim of error depends on the validity of these beliefs.