**STATE of Missouri, Respondent,**

v.

**Jerry L. TRACY, Appellant.**

**No. WD 50559.**

Missouri Court of Appeals, Western District.

Jan. 30, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1996.

Richard E. McFadin, Gallatin, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Joiner, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and HANNA, JJ.

FENNER, Chief Judge.

Jerry Tracy appeals from his convictions after trial by jury of murder in the second degree and armed criminal action pursuant to sections 560.021.1 and 571.015, RSMo 1994, respectively.

■ This appeal includes a challenge to the sufficiency of the evidence to support the conviction of second degree murder; therefore, in considering this appeal, we view the evidence in the light most favorable to the verdict. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989).

The evidence reveals that on April 8, 1994, the victim, Thomas "Juan" Canchola, went to a party with two co-workers at the home of Mark Amos. After a disturbance at the party involving one co-worker, both co-workers decided to leave the party around 11:00 p.m. The victim decided to stay at the party and retrieved his jacket and wallet from the co-workers' car.

The same evening, appellant and two of his friends were driving around in a blue Mustang owned by another friend, Paul Clark. While driving around, appellant showed his friends a .25 caliber pistol that he had in his pocket. After driving around, the three changed cars, getting into a red Chevrolet S–10 pickup, and went to the same party attended by Canchola and his friends.

While at the party, appellant was seen displaying the gun to several people and was asked to put it away. Appellant claims to have been drinking throughout the evening, having consumed a fifth of Hot Damn and a twelve pack of beer. Canchola became intoxicated at the party and asked Amos, the party host, to attempt to find him a ride home. Amos first asked Jessie Kincaid, one of appellant's friends, who refused. Appellant, who was standing next to Kincaid, volunteered to give Canchola a ride home using the vehicle driven by Kincaid.

Appellant and Canchola left the party sometime around midnight. Canchola instructed appellant to drive toward Lake Contrary and appellant did so. When they got to the back side of the lake, Canchola allegedly told appellant that "this would be fine right here" and began to touch and make sexual advances toward appellant. Appellant told police that he then got out of the truck and began walking down the road. As appellant walked away, he heard Canchola get out of the truck as well and walk up behind him. As Canchola walked up behind him, appellant drew his gun, turned, and fired one shot at Canchola. Appellant told the police that he saw Canchola go down, ran back to his truck, and drove away because he was scared.

The body of Canchola was discovered lying in the middle of County Road 200 in Lake Contrary by police officers at approximately 2:15 a.m. Canchola was deceased, having suffered a singled gunshot wound to the right side of his head near the temple. A single .25 caliber shell casing was found approximately seven feet, eleven inches from Canchola's head. A ballistics test later revealed that the shell casing had been fired from appellant's pistol as was the bullet recovered from Canchola's skull.

While police were investigating the scene, appellant went to see Clark at approximately 2:30 or 2:45 a.m. Appellant told Clark that he had run out of gas in the pickup truck. Appellant and Clark drove in Clark's Mustang to get a Suburban owned by appellant's father to push the truck to a gas station. Clark reported that appellant was not acting normal and kept repeating the phrase "oh, shit." On the way to the truck, appellant told Clark that he had shot someone, after having made the statement that he had done something bad.

After getting gas in the truck, appellant went to the Amos home at around 3:30 or 4:00 a.m. and was told his friends had returned to one of their homes. The next morning at 9:00 a.m., Kincaid found appellant sleeping on the couch of the home. As Kincaid drove appellant home that morning, they stopped to get soft drinks because appellant was ill with the "dry heaves." As they left the gas station where they stopped, appellant told Kincaid that he had taken Canchola down to the lake and "busted him," later explaining that he had shot Canchola.

When Clark left for work that morning, he saw appellant's gun on the passenger side floorboard of his Mustang. He drove the car to a wooded area and disposed of the gun. Eventually, Clark directed the police to the wooded area where the gun was found. Police arrested appellant at his home shortly thereafter. Appellant initially denied having a gun, having met the victim, and having attended the party at the Amos home. While at appellant's home, police recovered a .25 caliber semi-automatic spent shell casing from a Suburban at the residence. Appellant modified his statements to police on several occasions, eventually making a statement admitting the shooting.

On April 10, 1994, appellant and his attorney accompanied police to the crime scene and went through the setting and events surrounding the shooting. Appellant told the police at this time that he had thrown the gun in the lake at the beach area, even though the gun was eventually recovered in a wooded area with the help of Clark.

Appellant testified in his defense and called no other witnesses at trial. At the close of evidence, arguments, and instructions, the jury found appellant guilty of murder in the second degree and armed criminal action. In accordance with the verdict, appellant was sentenced to two consecutive terms of life imprisonment. This appeal followed.

## I. *VIOLATION OF THE RULE OF SEQUESTRATION OF WITNESSES*

Appellant claims that the trial court abused its discretion in overruling his objec-

tion and allowing the testimony of Major Earl Stout of the Buchanan County Sheriff's Department after the court's bailiff, Loren Kier, revealed that he had discussed witnesses testimony with Stout prior to Stout's testifying and after the rule of sequestration of witnesses had been requested by counsel and invoked by the court.

During the State's case-in-chief, appellant moved to exclude the testimony of Stout and presented the testimony of Kier. Kier stated that he was aware that the rule excluding witnesses from the courtroom had been invoked, yet had discussed appellant's case with Stout. While making conversation in a smoking area, Stout told Kier what he intended to testify about, specifically his theory on the precise location of the victim in relation to the vehicle at the time of the shooting. Stout and Kier also discussed the location of the shell casing.

After Stout shared his theory, Kier stated that William Newhouse, a State expert from Kansas City, had testified as to "the same thing" with regard to the shell casing ejection pattern tests. Kier could not recall whether he discussed any other areas of Stout's intended testimony except the location of the victim in relation to the vehicle and his corresponding testimony. Kier did not recall mentioning any other testimony than that of Newhouse.

After appellant presented Kier's testimony, the prosecutor explained to the court that he did not intend to inquire of Stout concerning his "theory of the case" or any of the areas Stout discussed with Kier and that Stout's testimony was completely unrelated to Newhouse's testimony. The court denied appellant's request to exclude Stout's testimony, agreeing that the conversation between Kier and Stout should not have occurred, but that the violation of the rule of exclusion of witnesses did not reach the level required to exclude Stout's testimony. Stout ultimately took the stand and testified about appellant's statements and conduct occurring while he accompanied appellant and his attorney to the crime scene on April 10, 1994.

 A court may order the exclusion of witnesses during a hearing so that they can-

not hear testimony of other witnesses. *State v. Ramsey*, 820 S.W.2d 663, 666 (Mo.App. 1991). Violation of "the rule" does not automatically bar admission of testimony by the offending witness. *State v. Gilmore*, 797 S.W.2d 802, 806 (Mo.App.1990). Rather, the decision to exclude such testimony lies within the sound discretion of the trial court. *Ramsey*, 820 S.W.2d at 666; *Gilmore*, 797 S.W.2d at 806–07. Testimony is generally excluded only in cases where the violation of "the rule" occurs under special circumstances. *Gilmore, id.* In Missouri courts, these special circumstances have generally been implicated in cases where the witness violates "the rule" with "the consent, connivance or procurement of the party or counsel calling him." *Id.* (citing *State v. Gibson*, 760 S.W.2d 524, 526–27 (Mo.App.1988)). If a witness violates "the rule" without the consent, connivance, or procurement of the party or counsel calling him, it is an abuse of discretion to exclude the testimony of the witness. *Gibson*, 760 S.W.2d at 526–27.

In the case at bar, there is no evidence that the conversation between Kier and Stout was the product of consent, connivance, or procurement on the part of the State. This court, like the trial court, does not wish to encourage conversations between court personnel and trial witnesses, especially after "the rule" has been invoked; however, there is no evidence that the conversation in question deprived appellant of a fair trial in any way as the actual testimony of Stout and the testimony of Newhouse were unrelated. The trial court did not abuse its discretion in allowing Stout's testimony. Point denied.

## II. *SUFFICIENCY OF THE EVIDENCE*

 In his second point on appeal, appellant contends that the trial court erred in denying his motions for judgment of acquittal and for new trial because there was insufficient evidence as a matter of law to establish that appellant intentionally shot Canchola, as opposed to accidentally shooting Canchola. In support of his argument, appellant cites *State v. Williamson*, 809 S.W.2d 16 (Mo.App. 1991), for the proposition that, in regards to a claim of insufficient evidence to support a conviction, the facts proven by circumstantial evidence must be consistent with each other, and the State's hypothesis of guilt, and pre-

clude any reasonable hypothesis of innocence.

 We begin our analysis by stating that appellant plainly misstates the law concerning the sufficiency of evidence claim. The rule in *Williamson* cited by appellant, the so-called "circumstantial evidence rule," was abrogated by the Missouri Supreme Court in *State v. Grim*, 854 S.W.2d 403, 405–08 (Mo. banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). The correct standard on appellate review of a claim of insufficient evidence to support conviction is whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.; Dulany*, 781 S.W.2d at 55. We view all facts and draw all inferences in the light most favorable to the verdict, and disregard evidence and inferences to the contrary. *Id.* It is not the function of this court to weigh the evidence; rather, we must decide whether the evidence was sufficient to support the conviction under the reasonable juror standard. *State v. Weide*, 812 S.W.2d 866, 869 (Mo.App.1991).

The crime of murder in the second degree is committed by knowingly causing the death of another person or, with the purpose of causing serious physical injury to another person, causing the death of that person. Section 565.021, RSMo 1994. The jury was instructed that it could find appellant guilty of murder in the second degree if his purpose in shooting Canchola was to cause serious physical injury.

Appellant's own statement to police and testimony at trial revealed that after Canchola made uninvited sexual advances towards appellant, he got out of the truck he was driving and started to walk down the road. Canchola got out of the truck also and approached appellant from behind. As Canchola approached appellant, he turned and intentionally fired his gun at Canchola. The only reasonable construction of this fact scenario is that the shooting of Canchola was not an accident, contrary to the argument of appellant, and consistent with the conclusion of the jury. We believe this alone is sufficient evidence to support the jury's conviction.

 Even if this were not enough to uphold appellant's conviction, the intent to cause serious physical injury can be inferred from the defendant's use of a deadly weapon on a vital area of a victim's body. *State v. O'Brien*, 857 S.W.2d 212, 218 (Mo. banc 1993). Further, a defendant's flight from the scene also illustrates a consciousness of guilt contrary to any theory of innocence. *State v. Rodden*, 728 S.W.2d 212, 219 (Mo. banc 1987). Appellant's use of a deadly weapon on a vital area of Canchola's body and his flight from the scene serve to solidify the conclusion that the shooting of Canchola was not an accident. There was sufficient evidence for a jury to conclude that appellant was guilty of second degree murder. Point denied.

Judgment affirmed.

All concur.