

# Missouri Court of Appeals
## Southern District

In Division

STATE OF MISSOURI, )
                                                     )

                Respondent, )

                                                     ) No. SD37450

      vs. )

                                                     ) FILED: August 21, 2023

CORNELIUS PERKINS, )

                Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

Honorable David A. Dolan, Judge

### AFFIRMED

Cornelius Perkins ("Defendant") was convicted, following a jury trial, of second-degree murder (Count 1), *see* section 565.021, armed criminal action (Count 2), *see* section 571.015, unlawful use of a weapon (Count 3), *see* section 571.030, and unlawful possession of a firearm (Count 4), *see* section 571.070.[1] On appeal, Defendant raises two points challenging his convictions under Counts 1, 2, and 3, but not his conviction under Count 4. Defendant contends (1) there was insufficient evidence to show he shot Marcus Dixon ("Victim"), and (2) the circuit court plainly erred in failing to *sua sponte* intervene and issue a curative instruction when, in

---

[1] All statutory references to section 565.021 are to RSMo Cum. Supp. 2017, all other statutory references are to RSMo 2016.

closing argument, the prosecutor accused Defendant of robbing Victim. Finding no merit in either contention, we affirm.

**Factual and Procedural Background**[2]

Around 9:30 p.m. on February 18, 2019, Defendant appeared to be trying to forcibly enter the home of Marquez Newman, a friend of Victim. Newman was home at the time, armed himself, and confronted Defendant. Defendant introduced himself, claiming his mother and Newman's mother were friends. Newman observed that Defendant was carrying a 9mm Hi-Point[3] handgun, due to its distinctive features. Following a brief conversation, Defendant departed, but at 9:48 p.m. he called Newman, asking if Newman wanted to "hit a lick" with Defendant. Newman declined, understanding this phrase to mean robbing someone.

Defendant's call to Newman was one of numerous incoming and outgoing calls, between 9:45 p.m. and 12:06 a.m., on two cell phones belonging to Defendant. These calls connected via a cell tower in the vicinity of where Victim was ultimately murdered.

Around 11:30 p.m., Victim, who had finished a shift at work, was walking down a street near Newman's house. A man approached Victim from behind and fired several shots from a 9mm Hi-Point handgun that struck Victim and fatally wounded him. Victim's assailant then fled. According to a witness to the shooting, Victim's assailant "possibly" had "dreads or something on his head." A nearby surveillance camera captured footage of an individual, wearing a hoodie, whose hair was hanging out, "[l]ike dreads."

---

[2] The following factual background is presented in the light most favorable to the verdict, in accordance with our standard of review detailed, *infra*, in our discussion of point 1.

[3] The firearm in question was identified as a Hi-Point make, C9 model, 9mm Luger caliber, semi-automatic pistol, serial number P1907178. However, in the record it is also incorrectly, but interchangeably, referred to as a Hollow Point 9mm. For ease of discussion, it will be referred to as a 9mm Hi-Point.

2

In the early morning of the following day, February 19, 2019, Defendant went to the home of his girlfriend, Zayvionna Murray. That day, Defendant texted Carrie Mehr, stating, "I need a pistol." During the conversation, Mehr stated, "I thought you had a burner. You want me to get you a burner?" Defendant then replied, "Yes, ma'am."

On February 23, 2019, Defendant was observed discarding what was later determined to be a 9mm Hi-Point handgun into a trash receptacle located outside a residence across the street from Murray's home. This incident was also captured on surveillance video.[4] Defendant later admitted he placed the handgun in Murray's purse and deposited the purse in the trash receptacle. This handgun, which had been reported to have been stolen some time the previous January, was the weapon used to murder Victim five days prior. Defendant concedes that he disposed of the murder weapon and that he is guilty of the unlawful possession charge, which was Count 4.

After disposing of the murder weapon, Defendant got into a vehicle and drove to a local police station, allegedly to clear his name. During his interview with police, Defendant falsely claimed that he was in Charleston, Missouri, at the time Victim was killed.

Defendant was thereafter arrested, charged by information, and tried before a jury. At trial, the prosecutor made the following statements during the State's closing argument:

> [Newman] knew [Victim]. They were good friends. The night of the homicide sometime after 9:00 pm the Defendant shows up to [Newman]'s house with a firearm, a black pistol. [Newman] believed it to be a Hi-Point. How did he know it was a Hi-Point? Because Hi-Points have distinct features. Juggling his door, banging on the door. He thought he was there to rob him that night.
>
> He didn't know [Defendant]. [Defendant's] mother knew his mother. But then [Defendant] makes this odd phone call back to [Newman] and asks him if he

---

[4] The surveillance video also revealed Defendant had dreadlocks.

wants to hit a lick. What does hit a lick mean? Rob somebody. [Defendant] robbed somebody [a]ll right that night and killed him.

The jury ultimately found Defendant guilty as charged, and the circuit court convicted and sentenced him to consecutive prison terms of thirty years for Count 1, fifteen years for Count 2, and five years for Count 3. This appeal of those convictions timely follows.

## Discussion

### *Point 1*

At trial, Defendant filed motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence, claiming that the State failed to prove the elements of the charged crimes. Defendant reasserted this claim in his motion for a new trial. In his first point on appeal, Defendant claims the circuit court erred in overruling his motion for judgment of acquittal and thereafter entering sentence and judgment on Counts 1, 2, and 3 because there was insufficient evidence from which a reasonable juror could have found that he was the person who shot Victim. We disagree.

> Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt.[5] *State v. Hunt*, 451 S.W.3d 251, 257 (Mo. banc 2014). This Court considers all evidence in the light most favorable to the verdict and grants the State all reasonable inferences. *Id.* Contrary evidence and inferences are disregarded. *Id.* The Court will not supply missing evidence or grant the State unreasonable, speculative, or forced inferences. *Id.*

***State v. Lammers***, 479 S.W.3d 624, 632 (Mo. banc 2016).

---

[5] Other than his identity as Victim's assailant, Defendant does not challenge the required elements necessary to sustain his convictions under Counts 1, 2, and 3. As such, we need not discuss those remaining elemental requirements here.

In the argument section of his brief, Defendant attempts to discount the significance of certain evidence relied on by the State in proving its case. First, Defendant concedes there was sufficient evidence to show "that the pistol he discarded in the garbage can . . . had been used to kill [Victim]" and that he "possess[ed] one like it the night [Victim] was murdered." But Defendant argues "[t]here was no evidence that the Hi[-]Point was an uncommon firearm," the murder weapon "had been reported stolen more than a month earlier[,]" and "[Defendant]'s request of [Mehr] to get him a 'burner pistol' the day after [Victim] was killed suggests that stolen weapons were trafficked in the community." (Record citation omitted.)

Next, Defendant focuses on the evidence that Defendant wanted to "hit a lick" and asked Newman to accompany him in doing so on the night of Victim's murder. Defendant notes that he "did not mention murder" in this exchange with Newman. As for the attack on Victim, Defendant notes, "there was no evidence of a robbery, or that [Victim] was carrying a significant amount of cash on his person the night he was murdered."

Defendant then identifies the evidence that, consistent with his own appearance, Victim's assailant appeared to have dreadlocks. Defendant argues that the possibility Victim's assailant had dreadlocks "with nothing more, is a poor basis for identification." Defendant further argues that "[e]specially in light of witness testimony that dreads were a common hairstyle for black men in Sikeston, and it was common for people to cut through the area pictured, testimony about what the surveillance video showed had little, if any, probative value." (Record citations omitted.)

Finally, Defendant acknowledges "[he] told officers he was in Charleston when [Victim] was killed, a statement shown to be false at trial by [Newman's] testimony and records of phone calls made by [Defendant] while in Sikeston around the time of the murder." "When proven

5

false, exculpatory statements evidence a consciousness of guilt." ***State v. Williamson***, 809 S.W.2d 16, 19 (Mo.App. 1991). Defendant relies on authority addressing a defendant's flight from police, asserting that such a situation is comparable to a false statement. Under such authority, "[f]light does not establish a defendant's guilty knowledge of a particular crime in comparison to other possible charges and alone is insufficient to support a conviction." ***State v. Schwartz***, 899 S.W.2d 140, 144-45 (Mo.App. 1995) (internal citation omitted). Defendant explains he showed Newman a 9mm Hi-Point handgun on the night Victim was killed. Therefore, according to Defendant, he had a motivation to lie to police because "[a]s a persistent felony offender, [he]was subject to prosecution and enhanced sentencing for possessing a firearm."

Defendant's aforementioned arguments fail for two reasons. First, Defendant relies on innocent explanations for otherwise incriminating evidence, such as his suggestion that weapon trafficking was how the murder weapon came into his possession. However, our standard of review "requires us to disregard any potentially innocent explanation of the evidence and instead view it in the light most favorable to the verdict." ***State v. Mosby***, 341 S.W.3d 154, 156 (Mo.App. 2011). "Evidence is sufficient to support guilt if any reasonable inference supports guilt, even if other 'equally valid' inferences do not." ***Id.***

Second, Defendant analyzes and dissects each piece of evidence in isolation. It may be true, as Defendant argues, that Defendant, in speaking to Newman, *only* mentioned robbing someone. It may also be true that dreadlocks, "with nothing more, is a poor basis for identification." Defendant, however, fails to take the next step and consider whether all of the other evidence provides "something more" thereby allowing a rational fact-finder, beyond a reasonable doubt, to connect Defendant to Victim's murder. The ***Schwartz*** case involving flight,

6

which Defendant cites and relies upon in dismissing his false statement to police, stands for the proposition that flight "alone" cannot support a conviction. 899 S.W.2d at 144-45. Defendant's false statement to police, however, is also not the only evidence connecting Defendant to Victim's murder. Undercutting Defendant's argument, **Schwartz** goes on to state that flight "can be a circumstance to be considered in connection with other evidence of the commission of a crime and shows a consciousness of guilt contrary to a theory of innocence." *Id.* at 145 (internal citation omitted).

Taking that next step of considering all of the evidence in this matter illustrates the sufficiency of the evidence. Victim was murdered in Sikeston with a 9mm Hi-Point handgun. Two hours before Victim's murder, Defendant was seen in Sikeston in possession of such a handgun. Newman's testimony and cell phone records establish Defendant's presence in the vicinity where Victim was murdered. Five days after the murder, Defendant was in possession of and attempted to dispose of the precise 9mm Hi-Point handgun used in said murder. Considering the evidence that the 9mm Hi-Point handgun Defendant showed to Newman was the same weapon used to murder Victim and later discarded in a trash receptacle by Defendant, it is a reasonable inference that Defendant was Victim's assailant. Defendant's attempt to clear his name by giving a false statement to police investigating the murder allows for the reasonable inference that Defendant was trying to cover up his involvement in *that* crime, as opposed to his involvement in any other crime.

For all of the foregoing reasons, the evidence was sufficient for a reasonable fact-finder to find that Defendant shot Victim. Point 1 is denied.

7

*Point 2*

Defendant concedes his second point was not preserved and requests plain error review. Defendant claims the circuit court plainly erred in failing to *sua sponte* intervene and issue a curative instruction to the jury when the prosecutor stated, "[Defendant] robbed somebody [a]ll right that night and killed him." Defendant maintains there was no evidence or reasonable inference that Victim was robbed and that, by stating a robbery occurred, the prosecutor unfairly linked Defendant to the murder. We find no manifest injustice or miscarriage of justice.

"The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014). Facially establishing a manifest injustice or a miscarriage of justice is a prerequisite for plain error review. *State v. Brandolese*, 601 S.W.3d 519, 525-26 (Mo. banc 2020). In the context of closing argument, "the decision to object is often a matter of trial strategy and in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *State v. Mayes*, 63 S.W.3d 615, 632 (Mo. banc 2001) (internal citation and quotation marks omitted). "Plain error relief as to closing argument should rarely be granted and is generally denied without explanation." *State v. Garner*, 14 S.W.3d 67, 76 (Mo.App. 1999).

Here, perhaps the prosecutor went too far in arguing that an actual robbery took place based solely upon Defendant's "hit a lick" comment. But given this comment, along with all of the other evidence connecting Defendant to Victim's murder set out in our discussion of point 1, *supra*, it was reasonable to infer that robbery was a *motive* involved in the murder. Therefore, we are unpersuaded the verdict would have been different had the prosecutor actually drawn the subtle distinction in her closing argument between *wanting* to rob someone versus actually doing

8

so.  Moreover, before retiring to deliberate, the jury was given the instruction:  "The attorneys will now have the opportunity of arguing the case to you.  Their arguments are intended to help you in understanding the evidence and applying the law, but they are not evidence."  We presume the jurors followed this instruction.  ***State v. Madison***, 997 S.W.2d 16, 21 (Mo. banc 1999).

No facial showing of manifest injustice appearing, we deny plain error review.

## **Decision**

The circuit court's judgment is affirmed.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS